PEOPLE v ANDERSON

Docket No. 60502. Argued June 5, 1979 (Calendar No. 1).—Decided
     August 28, 1980. Certiorari denied by the Supreme Court of the
     United States January 12, 1981.

Elva Jean Anderson was charged with first-degree murder. After
     the prosecution had examined five of its witnesses at trial, the
     Recorder's Court of Detroit, Thomas L. Poindexter, J., granted
     a motion for a reduction of bond and released the defendant on
     personal bond, stating that the proofs in the case were not as
     strong as he had thought when he denied a pretrial motion to
     quash the information. The trial court then, over objection of
     the prosecutor, accepted a plea of guilty to a charge of man-
     slaughter, dismissed the charge of murder, and discharged the
     jury. The Court of Appeals, Beasley, P.J., and V.J. Brennan
     and J.R. McDonald, JJ., reversed and remanded for trial on
     the charge of first-degree murder, holding that the trial judge
     was not authorized to accept the plea of guilty to a lesser
     charge and dismiss the murder charge over the prosecutor's
     objection and declaring that "no double jeopardy question
     arises" (Docket No. 26966). Defendant appeals. *Held:*

     1. The trial judge's actions in accepting the plea of guilty of
     the lesser offense of manslaughter and dismissing the murder
     charge over the prosecutor's objection appear to have been
     erroneous, but it is a separate question, one controlled by the
     decisions of the Supreme Court of the United States, whether
     the Double Jeopardy Clause would be violated by a retrial of
     defendant Anderson for murder after jeopardy had attached in
     respect to that charge. The Double Jeopardy Clause secures the
     defendant's interests in the finality of judgments, and in protec-
     tion against multiple prosecutions. If a trial ends in a judgment
     of acquittal, both interests are implicated, and there can be no

REFERENCES FOR POINTS IN HEADNOTES
[1, 9] 21 Am Jur 2d, Criminal Law §§ 492, 494, 517.
[2] 21 Am Jur 2d, Criminal Law § 176.
[3, 9] 21 Am Jur 2d, Criminal Law §§ 165, 166.
[4] 21 Am Jur 2d, Criminal Law §§ 178, 215.
[5] 21 Am Jur 2d, Criminal Law § 209 *et seq.*
[6, 7] 21 Am Jur 2d, Criminal Law § 216.
[8] 21 Am Jur 2d, Criminal Law §§ 81, 93.

retrial. The rule is absolute; it applies whether the acquittal is based on findings of a judge or the verdict of a jury, and whether it is erroneous or brought about with the defendant's voluntary participation. Where, however, the trial or proceeding does not end in a judgment of acquittal or conviction only the second interest is implicated, and the constitutional protection is not absolute. The defendant has an interest in having his guilt decided by the jury impaneled to try him and in avoiding the harassment of repeated proceedings. The people have a competing interest in having one complete opportunity to try those accused of breaking the law. Where there is no judgment of conviction or acquittal, those interests are balanced.

2. The people argue that the trial in this case did not end in an acquittal of the murder charges but that the trial court merely found an abuse of discretion in the pretrial procedure. The trial judge's characterization of his actions does not determine the matter; the reviewing court must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged. There is an acquittal, and a retrial is impermissible, where the judge evaluated the people's evidence and determined that it was legally insufficient to support a conviction.

3. The trial court, in accepting Anderson's plea of guilty, considered whether there was a factual basis for her plea, and found that she had committed manslaughter. The record is convincing that the judge chose to accept the defendant's plea because he concluded that she had not committed murder. The statements the judge made concerning the pretrial motion to quash the information were only afterthoughts in response to the prosecutor's arguments and objections. The judge explained his understanding of the law of homicide, particularly the defenses of excuse and justification; he expressed a belief that the prosecution had not and could not overcome Anderson's assertion of a defense of justification. The judge stated that the reason he had accepted the plea of guilty of manslaughter was that he concluded that in shooting the victim, who, she believed, was armed with a gun, had attempted to rape another woman, and was continuing to threaten the other woman, she did not limit herself to reasonable force. The judge decided that Anderson could assert a defense of excuse, that its merits must be assessed from the standpoint of her reasonable belief, and that, based on the testimony he had heard at trial, the prosecution had not proved and could not prove beyond a reasonable

doubt that she did not believe the killing was necessary to prevent the commission of a felony. Up to that point there had been no testimony disproving excuse from the viewpoint of the defendant, and the judge was convinced that the testimony of the remaining witnesses would, for the same reason, be insufficient. This ruling was a determination of factual innocence of murder, although it rested on questions of law.

4. A defense of excuse or justification, like those of insanity or entrapment, necessarily establishes lack of culpability for otherwise criminal acts because it goes to the central issue of criminal intent. It is irrelevant that the resolution of the factual issues depended on rulings of law concerning the defense of excuse or justification. Once it is determined that the judge resolved factual questions dispositive of elements of the crime, it follows that retrial for murder is barred by the Double Jeopardy Clause. In this case, the judge should have allowed the prosecution to present all of its witnesses. He could then have entertained a motion for a directed verdict. However, a procedural error, even of this magnitude, does not change the finality of the acquittal. Since the dismissal here was related to Anderson's factual guilt or innocence, it is irrelevant that she consented to, or even requested, the action terminating the trial. Although a judge should not consider the sufficiency of the evidence until the prosecutor has had an opportunity to present his entire case and the principle forbidding acceptance of a plea of guilty of a lesser offense and dismissal of the other charges over the prosecutor's objection is an important one, those precepts must yield to the rights secured by the Double Jeopardy Clause.

Reversed.

77 Mich App 357; 258 NW2d 225 (1977) reversed.

1. HOMICIDE — MURDER — PLEA OF GUILTY — LESSER OFFENSES — OBJECTION BY PROSECUTOR.

A trial judge may not, over the prosecutor's objection, accept a plea of guilty of a lesser offense of manslaughter and dismiss the principle charge of murder (MCL 750.316, 750.317, 750.321; MSA 28.548, 28.549, 28.553).

2. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — JURY TRIAL.

The constitutional protection of the Double Jeopardy Clause is implicated only when jeopardy has attached, which occurs in a jury trial when the jury has been impaneled and sworn (US Const, Am V; Const 1963, art 1, § 15).

3. CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The Double Jeopardy Clause secures the defendant's interests in the finality of judgments and in protection against multiple prosecutions (US Const, Am V; Const 1963, art 1, § 15).

4. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — ACQUITTAL.

The rule that if a trial ends in a judgment of acquittal there can be no retrial of the charges is absolute; it applies whether the acquittal is based on findings of a judge or the verdict of a jury, and whether it is erroneous or brought about with the defendant's voluntary participation (US Const, Am V; Const 1963, art 1, § 15).

5. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — TERMINATION OF PROCEEDINGS.

The constitutional protection against double jeopardy is not absolute where the trial or proceeding does not end in a judgment of acquittal or conviction because the defendant's interest in avoiding the harassment of repeated proceedings and in having his guilt decided by the jury impaneled to try him is balanced by the people's competing interest in having one complete opportunity to try those accused of breaking the law (US Const, Am V; Const 1963, art 1, § 15).

6. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — ACQUITTAL.

There is an acquittal, and retrial is impermissible under the Double Jeopardy Clause, where the trial judge evaluated the prosecution's evidence and determined that it was legally insufficient to support a conviction; the trial judge's characterization of his own actions cannot control what he did; rather, the reviewing court must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged (US Const, Am V; Const 1963, art 1, § 15).

7. HOMICIDE — MURDER — DOUBLE JEOPARDY — PLEA OF GUILTY — LESSER OFFENSES — ACQUITTAL.

A trial judge's decision, during a trial for murder, to accept a defendant's plea of guilty of manslaughter and to dismiss the murder charge involved a resolution of the factual elements of the offense charged and amounted to a factual determination of acquittal of the murder charge for purposes of the Double Jeopardy Clause where the record shows that the judge concluded that the defendant had not committed murder on the basis of his understanding of the law of homicide, particularly the defenses of excuse and justification, and determined that the defendant could assert a defense of excuse and that the

prosecution had not proved and could not prove beyond a reasonable doubt that the defendant did not believe a killing was necessary to prevent the commission of a felony (US Const, Am V; Const 1963, art 1, § 15; MCL 750.316, 750.317, 750.321; MSA 28.548, 28.549, 28.553).

8. CRIMINAL LAW — DEFENSES — INTENT.

A defense of excuse or justification, like defenses of insanity or entrapment, necessarily establishes lack of culpability for otherwise criminal acts because it goes to the central issue of criminal intent.

9. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — ACQUITTAL.

The rights secured by the Double Jeopardy Clause must prevail over the precepts that a judge should not consider the sufficiency of the evidence until the prosecutor has had an opportunity to present his entire case and should not accept a plea of guilty of a lesser offense and dismiss the other charges over the prosecutor's objection (US Const, Am V; Const 1963, art 1, § 15).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Kim Robert Fawcett)* for defendant.

LEVIN, J. After the prosecution had examined some, but not all, of its witnesses in a murder case, the trial judge, over vigorous prosecutorial objection, accepted Anderson's plea of guilty to the charge of manslaughter, dismissed the murder charge and discharged the jury. The prosecution seeks, by this appeal, the opportunity to retry Anderson on a charge of first-degree murder. The issue is whether retrial is barred by the Double Jeopardy Clause.[1]

We hold:

---

[1] US Const, Am V; Const 1963, art 1, § 15.

The trial judge's action represented a resolution of "some or all of the factual elements" of the murder charge and was therefore an acquittal for double jeopardy purposes, barring reprosecution. It is irrelevant that the acquittal

a) was not so denominated by the trial judge,

b) may have been erroneous both procedurally and in terms of the questions of law on which it was founded, and

c) came about with defendant's cooperation and consent.

I

Elva Jean Anderson was charged with first-degree murder. Willie Young testified that he saw her shoot and kill Willie Ray Russell.[2]

Young, a doorman at a hotel, testified that Barbara Golden and Russell came to the hotel and went to the front desk. Golden kept looking "funny" at Young. She talked with the desk clerk and with Young. After Young said, "You turn around and go on back out the door. I don't want no trouble in here", Russell left the hotel. Golden made a telephone call, and then waited with Young in the hallway of the hotel.

About 20 minutes later, a taxicab pulled up and two passengers stepped out; Anderson was one of them. Golden ran up to Anderson, who slapped her. Anderson, Golden and the other person who had arrived in the cab walked around the side of the hotel. About two to three minutes later, Young saw Anderson pull a shotgun out of her "britches" and open the door to the car in which Russell was

---

[2] The facts are taken from the transcript of the preliminary examination. The stenographic notes of the three-day trial have not been transcribed except for the colloquy concerning Anderson's plea of guilty of manslaughter.

now sitting. A brief conversation ensued, Young heard Golden say "don't shoot him", and then he heard a shot. After the shot, Young heard Anderson say "[m]otherfucker, I bet you won't try to rape nobody else".

Anderson was bound over on a charge of first-degree murder. A pretrial motion to quash was denied.

At trial, the prosecution had presented its first five witnesses, but had not yet completed presenting its case, when the judge entertained a motion for reduction of bond. Over the prosecutor's objection the judge granted Anderson's release on personal bond, stating that "the proofs [of murder] in this case are not strong".

Thereupon, an off-the-record side bar conversation was held with counsel. Immediately thereafter, following an apparently brief conversation between Anderson and her counsel, she offered to plead guilty to a charge of manslaughter.

Over the prosecutor's objection, the judge proceeded to take Anderson's guilty plea, advising her of her rights and establishing a factual basis for her plea. She said that Golden was her lover and had called her saying that a man was waiting outside the hotel with a gun and was trying to rape her and asked Anderson to come pick her up. Anderson said that she brought her shotgun because she believed Golden when she said that a man with a gun was waiting outside the hotel and was trying to rape her. Anderson said that she approached the car in which Russell was sitting because she believed that he had attempted and still intended to rape Golden. She asked Russell to get out of the car, "because I didn't want to shoot him", and repeated the request several times. Anderson thought that Russell "was digging for a

gun or something" and when he didn't come out she shot him.

The judge accepted Anderson's plea to the charge of manslaughter, said he was dismissing the "charges of murder in the first degree and murder in the second degree" and discharged the jury.[3]

The Court of Appeals reversed and remanded for trial on first-degree murder. It held that the judge was not authorized to accept a plea to a lesser offense and dismiss the murder charge over the prosecutor's objection, and declared that "no double jeopardy question arises".

## II

The people contend, relying on *Genesee Prosecutor I*[4] and *Genesee Prosecutor II,*[5] that the Court of Appeals correctly found that the judge erred in dismissing the murder charge. Anderson claims that the Double Jeopardy Clause bars further prosecution for murder whether the judge erred or not. We agree that reprosecution is constitutionally impermissible.

In *Genesee Prosecutor I* this Court held that a judge is not authorized, over the prosecutor's objection, to accept a plea of guilty of an offense not charged or included in the information or indictment. *Genesee Prosecutor II* enlarged this holding and declared that a judge cannot, over the prosecutor's objection, accept a plea of guilty of a lesser included offense and dismiss the charge of the

---

[3] Anderson was sentenced to three years' probation on the manslaughter charge.

[4] *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972).

[5] *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974).

greater offense; we set aside a plea of guilty of manslaughter and remanded for trial on the charged offense of murder. In those cases, however, the plea was offered and the charge dismissed before trial and impaneling of a jury. We noted that there was no double jeopardy issue in *Genesee Prosecutor II* because the defendant "has not been tried for murder".[6]

The judge's actions in accepting a plea of guilty of the lesser offense of manslaughter and dismissing the murder charge appear to have been violative of *Genesee Prosecutor II*. It is, however, a separate question, one controlled by the decisions of the United States Supreme Court, whether the Double Jeopardy Clause would be violated by a retrial of Anderson for murder after jeopardy had attached in respect to that charge. We conclude (Part III, *infra)* that the Double Jeopardy Clause would be violated by retrial because the judge made a factual determination upon the prosecutor's proofs that one or more elements of murder could not be established. This is true notwithstanding that the judge's acceptance of a plea to a lesser offense over the prosecutor's objection appears to have violated the specific dictates of *Genesee Prosecutor II*.

### A

The constitutional protections of the Double Jeopardy Clause are implicated only when jeopardy has "attached". Jeopardy attaches in a jury trial when the jury has been impaneled and sworn.[7]

The Clause secures the defendant's interests in

---

[6] *Id.,* p 123.

[7] *Crist v Bretz,* 437 US 28; 98 S Ct 2156; 57 L Ed 2d 24 (1978).

(1) the finality of judgments,[8] and (2) protection against multiple prosecutions.[9]

If a trial ends in a judgment of acquittal, both interests are implicated, and there can be no retrial.[10] This has been called "the most fundamental rule in the history of double jeopardy jurisprudence",[11] and is absolute. It applies whether the acquittal is based on findings of a judge or the verdict of a jury,[12] and whether it is erroneously based[13] or brought about with the defendant's voluntary participation.[14]

Where, however, the trial or proceeding does not end in a judgment of acquittal or conviction, only the second interest is implicated, and the constitutional protections are not absolute. The defendant has an interest in avoiding harassment from repeated proceedings[15] and in having his guilt de-

---

[8] *Id.*, p 33; *Brown v Ohio*, 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977); *United States v Jorn*, 400 US 470, 479; 91 S Ct 547; 27 L Ed 2d 543 (1971) (plurality opinion).

[9] *United States v Scott*, 437 US 82, 92; 98 S Ct 2187; 57 L Ed 2d 65 (1978); *Arizona v Washington*, 434 US 497, 503-505; 98 S Ct 824; 54 L Ed 2d 717 (1978); *Green v United States*, 355 US 184; 78 S Ct 221; 2 L Ed 2d 199; 61 ALR2d 1119 (1957).

[10] *Sanabria v United States*, 437 US 54, 64; 98 S Ct 2170; 57 L Ed 2d 43 (1978); *United States v Scott, supra*, pp 91, 96; *United States v Martin Linen Supply Co*, 430 US 564, 571; 97 S Ct 1349; 51 L Ed 2d 642 (1977); *Fong Foo v United States*, 369 US 141, 143; 82 S Ct 671; 7 L Ed 2d 629 (1962).

Although *retrial* following an acquittal is barred, the government may *appeal* if reinstatement of a jury's verdict of conviction, rather than retrial, is sought, *e.g.*, where the judge enters an acquittal on a post-trial motion. *United States v Wilson*, 420 US 332; 95 S Ct 1013; 43 L Ed 2d 232 (1975).

[11] *United States v Martin Linen Supply Co, supra*, p 571.

[12] *Sanabria v United States, supra*, p 64, fn 18; *United States v Scott, supra*, p 91; *United States v Martin Linen Supply Co, supra*; *Fong Foo v United States, supra*.

[13] *Sanabria v United States, supra*, p 64; *United States v Scott, supra*, p 98; *Fong Foo v United States, supra*.

[14] *Sanabria v United States, supra; cf. United States v Scott, supra*, pp 98-101.

[15] " '[T]he State with all its resources and power should not be

cided by the jury impaneled to try him.[16] The people, however, have a competing interest in having one complete opportunity to try those accused of breaking the law.[17] Where there is no judgment of conviction or acquittal, these interests are balanced.[18]

If the trial or proceeding ends without the defendant's consent, further prosecution is generally barred; the defendant's "valued right to have his trial completed by a particular tribunal"[19] was taken from him, and reprosecution smacks of harassment. An exception is recognized, and retrial permitted, where "manifest necessity" compelled the termination of the first trial or proceeding.[20]

---

allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " *United States v Scott, supra,* p 87, quoting *Green v United States, supra.*

"There are a number of reasons a retrial enhances the risk that 'even though innocent, [the criminal defendant] may be found guilty.' * * * A retrial affords the Government the opportunity to re-examine the weaknesses of its first presentation in order to strengthen the second. And, as would any litigant, the Government has been known to take advantage of this opportunity. It is not uncommon to find that prosecution witnesses change their testimony, not always subtly, at second trials. See *Arizona v Washington,* 434 US 497, 504, fn 14 [98 S Ct 824; 54 L Ed 2d 717] (1978), quoting *Carsey v United States,* 129 US App DC 205, 208-209; 392 F2d 810, 813-814 (1967)." *United States v Scott, supra,* p 105, fn 4 (Brennan, J., dissenting).

[16] *Downum v United States,* 372 US 734, 736; 83 S Ct 1033; 10 L Ed 2d 100 (1963).

[17] *United States v Scott, supra,* p 100; *Arizona v Washington, supra,* p 509.

[18] *United States v Scott, supra,* p 92; see, also, *United States v Jorn, supra,* pp 480-482 (plurality opinion); *Wade v Hunter,* 336 US 684, 689; 69 S Ct 834; 93 L Ed 974 (1949).

[19] *Wade v Hunter, supra,* p 689.

[20] "Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Arizona v Washington, supra,* p 505. See, also, *e.g., United States v Scott, supra,* pp 92-93.

Where the defendant himself brings about the termination of the proceeding on a basis unrelated to factual guilt or innocence, retrial is generally permitted.[21] The defendant, having deliberately chosen to take the case from the jury cannot complain of the loss of the first trier of fact or of prosecutorial harassment through multiple prosecutions; he must live with "the consequences of his voluntary choice".[22] An exception is made, and retrial barred, when the defendant's motion is induced by bad-faith conduct of the prosecutor or judge.[23]

## B

The prosecution contends that it is apparent from statements by the judge following acceptance of the guilty plea and dismissal of the murder charge that he merely found an abuse of discretion in the pretrial charging process. From this it argues that the trial did not end in an acquittal on the murder charges—there was no "final judgment" that Anderson has an interest in preserving; because the trial was terminated on a basis unrelated to factual guilt or innocence, with Anderson's cooperation and over prosecutorial objection, her interests are subordinate to those of the people; she cannot complain of harassment by multiple prosecution; the people seek only "one fair opportunity" to convict, which was wrongfully taken from it by the judge.

We reject the premise of the people's argument.

---

[21] *United States v Scott, supra*, p 100. See *United States v Dinitz*, 424 US 600, 607-608; 96 S Ct 1075; 47 L Ed 2d 267 (1976); *United States v Jorn, supra*, pp 484-485 (plurality opinion).

[22] *United States v Scott, supra*, p 99.

[23] *Lee v United States*, 432 US 23, 33-34; 97 S Ct 2141; 53 L Ed 2d 80 (1977); *United States v Jorn, supra*, p 485 (plurality opinion).

We conclude that the judge's action was an acquittal of the murder charges for double jeopardy purposes. No balancing of interests is required; reprosecution is barred.

## III

To be sure, the judge did not say that he was directing a verdict, and no formal judgment of acquittal was entered. The determination of what the judge did, however, does not turn on how the judge characterizes his actions. "[T]he trial judge's characterization of his own actions cannot control the classification of the action."[24] What constitutes an "acquittal" is not controlled by the form of the judge's action.[25]

To decide how a trial judge's action should be characterized, the reviewing court "must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged".[26] There is an acquittal and retrial is impermissible when the judge "evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction".[27]

[24] *United States v Scott, supra,* p 96, quoting *United States v Jorn, supra,* p 478, fn 7 (plurality opinion). See *United States v Martin Linen Supply Co, supra.*

In the following cases the trial judge's characterization was held not to be controlling in determining whether there had been an acquittal: *United States v Appawoo,* 553 F2d 1242 (CA 10, 1977) (trial judge's "acquittal" held not an acquittal for double jeopardy purposes); *United States v Hill,* 473 F2d 759 (CA 9, 1973) (dismissal of indictment held to be an acquittal for double jeopardy purposes). See, also, *United States v Sisson,* 399 US 267; 90 S Ct 2117; 26 L Ed 2d 608 (1970) (post-trial order in arrest of judgment held to be an acquittal, based on now repudiated definition of double jeopardy "acquittal").

[25] *United States v Martin Linen Supply Co, supra,* p 571.

[26] *Id.*

[27] *Id.,* p 572. See *People v Hampton,* 407 Mich 354, 385-386; 285 NW2d 284 (1979) (RYAN, J.).

We conclude that the judge's decision to accept Anderson's mid-trial plea and to dismiss the murder charge involved a resolution of factual elements of the offense charged, and was based on his belief, correct or incorrect, prematurely formed or not, that the evidence was insufficient to support a conviction of murder.

## A

In accepting Anderson's plea to manslaughter, the judge considered her factual guilt or innocence of that lesser offense. The judge examined Anderson to determine whether there was a factual basis for her plea. The judge found that she *had* committed manslaughter.

The transcript convinces us that the judge chose to accept this plea to manslaughter because he concluded that Anderson *had not* committed murder.

The prosecution emphasizes the judge's statements that he was merely granting Anderson's pretrial motion to quash the information charging murder. But those statements were made only as an afterthought in response to the prosecutor's arguments and objections.

The judge expressed his belief that there is an exception to the *Genesee Prosecutor* cases when the prosecutor has abused his charging discretion and said that the exception "does not apply" "to this case except to the following extent":

"The court would find in this case *after hearing the testimony up to this time,* that the charge of murder should not have been made in this case; that the judge who conducted the examination in this case, if she had heard the testimony that *has been given in this court,* would not have bound the defendant over on the charge

of murder in the first degree and that this court, prior to the trial of the case, when considering a motion made by the defense to dismiss the case, would have dismissed the charges of murder in the first degree and murder in the second degree *if the court had been* in possession of the facts *which this court has heard in this case."* (Emphasis supplied.)

The judge proceeded to explain his understanding of the law of homicide, particularly the defenses of excuse and justification.[28] On the basis of this understanding, he expressed his belief that the prosecution had not and could not overcome Anderson's assertion of a justification defense.

*"The people, nevertheless, in a case have the burden of proving that it was not a case of justification, or excuse*—this has been held in a number of recent cases and the people must also prove a number of other exceptions to the law—that it was not an accident, for instance, and, in this particular case, we are dealing with the situation of a private citizen who took the law into her hands and killed another person—as she says —enforcing the law.

\* \* \*

"In determining whether the defendant was justified under these circumstances *the matter must be determined from the standpoint of the defendant in the case, not from the standpoint of the officers*—the officer in charge of the case, nor from the standpoint of the prosecutor, or the judge, but from her own honest intentions in a matter of this kind, and the court feels that there was—under these definitions, if the defendant had only used reasonable force in the case, she

---

[28] The judge expressed his belief that it was justifiable homicide for a person to kill another so as to prevent "atrocious felonies, accompanied with violence and personal danger to others \* \* \* the person making the attempt may, by the common law, if he cannot be otherwise prevented, be killed on the spot and the law will not recognize the act as a crime. In cases of this sort, in order to justify the homicide, it must appear that there were good grounds for a suspicion that the person killed had a felonious intent".

would have been justified under the circumstances of this case.

*"The reason that this court has accepted the plea of manslaughter in the case is the fact that the court concludes that she did not limit herself to reasonable force in this case but that she went beyond reasonable force in the case,* and, therefore, committed the offense of manslaughter in this case, which is the crime as, for instance, where a policeman, in making an arrest, uses excessive force and commits a homicide—the crime is manslaughter and the same rule would apply to a citizen as in this case and, *accordingly, this court dismisses the—court grants Mr. Roth's motion filed prior to the trial of this case to dismiss to the extent that it applies to the charges of murder in the first degree and murder in the second degree,* leaving the charge of manslaughter to which the defendant has just pled guilty in this case." (Emphasis supplied.)

After the prosecutor objected that there was sufficient evidence to sustain a conviction and that he had two more res gestae witnesses that the court had not allowed to testify, the judge responded:

*"[T]he court concluded that the people simply had not overcome their burden of proving that there was no excuse or provocation as to murder in the first and second degree* and, accordingly, the court would have had to eventually direct a verdict of not guilty on those two counts.

\* \* \*

"You are overlooking the fact that the law—it is clearly established that in determining matters of this kind, it must be looked at from the belief and position of the defendant, not the beliefs or position of the officers in the case or any other person, *and that the court, having heard witnesses called by the people in the case, was convinced that she was well justified in believing that there was an attempted rape in the case."* (Emphasis supplied.)

Another prosecutor then appeared to add his protest to that previously made. He also inquired whether "by proffering this plea, and by the court accepting it, that the defense would waive any question of jeopardy that may arise in the substantive case?" Defense counsel responded negatively. The judge then said "that is a question that would properly have to be determined by the United States Supreme Court". He indicated that his decision was *not* based on an examination of the preliminary examination transcript, saying that he had felt that "based on the testimony taken at the examination, that the prosecution was justified in taking the matter to trial without any reduced plea". He then added somewhat gratuitously that "if the examining magistrate had heard the testimony that has been heard in this court that the defendant would not have been bound over for trial on the charge of first-degree murder in this case".

The judge did not determine that there was a defective information or dismiss the murder charges on a ground unrelated to Anderson's guilt or innocence;[29] he did not find an abuse of discretion by the examining magistrate or prosecutor. He determined, rather, that Anderson could assert a defense of excuse, that its merits must be assessed from the standpoint of her reasonable belief, and that, based on what he had heard at trial, the prosecution had not proved and could not prove beyond a reasonable doubt that she did not believe the killing was necessary to prevent the commission of a felony. The witnesses up to that point had not given testimony disproving excuse "from the belief and position of the defendant"

[29] See *United States v Scott, supra,* p 98 (allowing retrial where the dismissal was for preindictment delay).

and the judge was convinced that testimony of the remaining witnesses would, for the same reason, be insufficient.

That ruling was a determination of Anderson's factual innocence of murder, although rested on questions of law.

The United States Supreme Court has held that an appellate ruling that there was insufficient evidence to rebut an insanity defense was "a resolution, correct or not, of some or all of the factual elements of the offense charged," and thus an acquittal barring reprosecution.[30] Subsequently, commenting on that holding, the Court elaborated:

"The defense of insanity, like the defense of entrapment, arises from 'the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense' * * * where other facts established to the satisfaction of the trier of fact provide a legally adequate justification for otherwise criminal acts. Such a factual finding *does* 'necessarily establish the defendant's lack of criminal culpability' * * *. By contrast, the dismissal of an indictment for preindictment delay represents a legal judgment that a defendant, although criminally culpable, may not be punished because of a supposed constitutional violation." (Emphasis in original.)[31]

A defense of excuse or justification, like defenses of insanity or entrapment, "necessarily establishes lack of culpability" within the meaning of the passage just quoted, because it goes to the central issue of criminal intent.[32] It is irrelevant that the

[30] *Burks v United States*, 437 US 1, 10; 98 S Ct 2141; 57 L Ed 2d 1 (1978).

[31] *United States v Scott, supra,* pp 97-98.

[32] See, also, Comment, *The 1978 Double Jeopardy Cases—Mistrials, Dismissals, and Acquittals,* 83 Dickinson L Rev 291, 311-312 (1979):
"An example of a legal-factual defense, not mentioned in *Scott,* that should be unappealable is lack of specific intent to commit the crime

resolution of the factual issue depended on rulings
of law concerning the defense of excuse and justifi-
cation.[33]

**B**

Once it is determined that the judge resolved
factual questions dispositive of elements of murder
in Anderson's favor, it follows that retrial for
murder is barred.

*Fong Foo v United States*[34] highlights that the
rule prohibiting retrial after acquittal is absolute.
After three government witnesses had testified,
and while a fourth was in the process of testifying,
the trial judge directed verdicts of acquittal and
entered formal judgments accordingly. He ad-
vanced two reasons for doing so: there was im-
proper conduct on the part of the prosecutor and
the witnesses lacked credibility. The Court of Ap-
peals set aside the acquittals and ordered retrial.
The Supreme Court reversed in a brief opinion,
holding that because the trial terminated in final
judgments of acquittal, government appeal was
barred even though "[t]he Court of Appeals
thought, not without reason, that the acquittal
was based upon an egregiously erroneous founda-

---

because of the defendant's belief at the time of the act that the
underlying statute was unconstitutional. This defense must be distin-
guished from the strictly legal defense that the statute is unconstitu-
tional. A favorable ruling on the former is a ruling on one of the
factual elements of any crime—intent. A favorable ruling on the
latter, on the other hand, does not go to culpability or insufficiency of
the evidence but, rather, indicates that the defendant, though crimi-
nally culpable, cannot be convicted."

[33] It makes no difference that those rulings may have been erro-
neous: "[T]he fact that 'the acquittal may result from erroneous
evidentiary rulings or erroneous interpretations of governing legal
principles,' * * * affects the accuracy of that determination, but it
does not alter its essential character." *United States v Scott, supra,* p
98.

[34] *Fong Foo v United States, supra.*

tion. Nevertheless, '[t]he verdict of acquittal was final, and could not be reviewed * * * without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution.' *United States v Ball,* 163 US 662, 671 [16 S Ct 1192; 41 L Ed 300 (1896)]".[35]

In *Sanabria v United States,* 437 US 54; 98 S Ct 2170; 57 L Ed 2d 43 (1978), where the judge excluded certain evidence and acquitted the defendant for evidentiary insufficiency, the Court, on the basis of *Fong Foo,* held that retrial was impermissible and observed that "when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous".[36]

In the instant case, the judge should have allowed the prosecution to present all of its witnesses. He could then have entertained a motion for a directed verdict. *Fong Foo* demonstrates, however, that a procedural error, even of this magnitude, does not change the finality of an acquittal, any more than would an erroneous determination on the elements of the crime charged.

Citing *United States v Scott,* 437 US 82; 98 S Ct 2187; 57 L Ed 2d 65 (1978); *Lee v United States,*[37] and *United States v Dinitz,*[38] the people argue that retrial is permitted after a defendant causes or participates in termination of trial on a basis unrelated to factual guilt or innocence. That argument, however, falls with its premise that the first trial was brought to a close "on a basis unrelated to factual guilt or innocence".

---

[35] *Id.,* p 143.

[36] *Sanabria v United States, supra,* p 64.

[37] *Lee v United States,* 432 US 23; 97 S Ct 2141; 53 L Ed 2d 80 (1977).

[38] *United States v Dinitz,* 424 US 600; 96 S Ct 1075; 47 L Ed 2d 267 (1976).

The trial in *Dinitz* ended in a mistrial after the judge expelled one of the defendant's lawyers. In *Scott,* the indictment was dismissed because of preindictment delay. In *Lee,* the information failed to list all the elements of the offense charged. In none of those cases was the termination of proceedings related to factual guilt or innocence. Since the dismissal here was related to Anderson's factual guilt or innocence, it is irrelevant that she consented to, or even requested, the judge's action terminating the trial.[39]

Although a judge should not rule on the sufficiency of the evidence until the prosecutor has had an opportunity to present his entire case and while the principle underlying the *Genesee Prosecutor* cases is of considerable importance, these precepts must yield to the rights secured by the Double Jeopardy Clause.

We reverse the judgment of the Court of Appeals.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

---

[39] See fn 14, *supra,* and accompanying text.