·PEOPLE v NIX

Docket No. 103072. Argued October 8, 1996 (Calendar No. 1). Decided
    December 30, 1996.

   Terressa L. Nix was tried before a jury in the Oakland Circuit Court
   on charges of one count of first-degree premeditated murder and
   one count of felony murder, arising from the death of a person who
   had been kidnapped by the defendant's boyfriend and locked in the
   trunk of the defendant's car for six days. At the conclusion of the
   prosecution's case in chief, the court, Fred M. Mester, J., granted
   the defendant's motion for a directed verdict, finding as a matter of
   law that the defendant owed no legal duty to the victim. The court
   stayed the entry of its order to permit appellate review. The Court
   of Appeals, MICHAEL J. KELLY, P.J., and SHEPHERD and FITZGERALD, JJ.,
   reversed and remanded for further proceedings in an unpublished
   order (Docket No. 143014). On remand, the trial judge recalled the
   original jury, ultimately discharged it after concluding that the orig-
   inal jurors had insufficient memory of the proceedings, and
   empaneled a new jury, which convicted the defendant of involun-
   tary manslaughter. After remand, the Court of Appeals, TAYLOR, P.J.,
   and GRIFFIN and W. G. SCHMA, JJ., reversed, holding that attempting
   to stay entry of an order granting a directed verdict of acquittal
   cannot be used as a means of avoiding protections against double
   jeopardy (Docket No. 156242). The people appeal.

       In an opinion by Justice CAVANAGH, joined by Chief Justice
   BRICKLEY, and Justices LEVIN and MALLETT, the Supreme Court held:

       The trial court's grant of the defendant's motion for a directed
   verdict barred any further proceedings relative to the charges
   against her. Its attempt to circumvent the clear dictates of double
   jeopardy jurisprudence by staying the effect of its determination is
   without effect.

       1. The trial court's order was a binding legal resolution, based on
   its evaluation of all the evidence presented by the prosecution in
   its case in chief. The fact of this ruling precludes appellate inquiry
   into its legal correctness. The text of the trial court's order makes
   it clear that, in granting defendant's motion for directed verdict, it
   considered all the factual evidence proffered by the prosecution
   and concluded that, as a matter of law, it was insufficient to permit

the jury to convict defendant of the charges brought under either theory.

2. The prosecution had presented all the evidence it planned on presenting and had formally concluded its case in chief. The trial court was fully aware of all the evidence, and apparently considered it, before reaching its ultimate legal conclusion. The judge evaluated the government's evidence and determined that it was legally insufficient to sustain a conviction, constituting an acquittal for purposes of the Double Jeopardy Clause. The prosecutor chose to proceed on the theory that the defendant was guilty of the charges brought against her because she had a legal duty to the victim that she failed to fulfill. The prosecutor then presented its evidence, and, after considering all the evidence, the trial court ruled that it was legally insufficient to support a conviction of the charges brought against the defendant. That ruling was completely dispositive of this case for purposes of the Double Jeopardy Clause.

Affirmed.

Justice BOYLE, joined by Justices RILEY and WEAVER, dissenting, stated that the defendant's retrial and conviction was not barred by the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. A decision that operates to bar prosecution because of an erroneous legal ruling by a trial judge is so contrary to sound public policy that it should be rejected unless compelled.

The Double Jeopardy Clause prohibits retrial after a directed verdict of acquittal. By contrast, where a defendant brings about the termination of a proceeding on a basis unrelated to factual guilt or innocence, retrial generally is permitted. A judicial ruling is an acquittal only when, in terminating the proceeding, the trial court actually resolves a factual element necessary for a criminal conviction in favor of the defendant. Government appeals from dismissals are permissible if two requirements are satisfied: the trial court did not rely on the sufficiency of the evidence to support a conviction of the offense charged, and the defendant sought dismissal not related to factual guilt or innocence.

In this case, the trial judge viewed the ruling as a legal conclusion, not a determination of the factual elements. He applied the proper legal presumption to the people's proof, characterized the ruling as a matter of law, and stayed his order to allow an interlocutory appeal. The language of the court's order, although it addressed some facts, did not resolve any key or essential factual elements of the offenses charged because legal duty is not an element of either offense. Even if the trial judge could be said to have reached an arguably factual conclusion regarding the state of the

proofs, retrial was permissible because the factual finding did not relate to any factual element that the prosecution was required to prove. The protective purposes underlying double jeopardy were not implicated by the trial court's ruling. Because the trial court's ruling was not an acquittal, the prosecution and conviction of the defendant did not constitute double jeopardy under the United States Constitution.

208 Mich App 648; 528 NW2d 208 (1995) affirmed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Richard Thompson*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Richard H. Browne*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *David A. Moran*) for the defendant.

Amicus Curiae:

*Michael Thomas*, President, *John D. O'Hair*, Prosecuting Attorney; and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for the Prosecuting Attorneys Association of Michigan.

CAVANAGH, J. This case presents us with the question whether defendant's rights under the Double Jeopardy Clause were violated. The Court of Appeals concluded that such a violation had occurred, and reversed defendant's conviction. We now affirm.

I

Defendant was charged with one count of first-degree premeditated murder and one count of felony murder.[1] The victim was kidnapped by defendant's

---

[1] MCL 750.316; MSA 28.548.

boyfriend, Robert Hogans,[2] who locked the victim in the trunk of her own car while he, often accompanied by defendant, used the car for six days. The victim ultimately died from a combination of dehydration and methanol poisoning, which resulted from the ingestion of windshield washer fluid.

At trial, the prosecution's theory was that defendant was guilty of the murder both directly and under an aiding and abetting theory. After completion of the prosecution's case in chief, defendant made a motion for directed verdict. After hearing oral arguments on the motion, the court issued a written order granting the motion on July 19, 1991, which in its entirety states:

> The Defendant having come before this Court charged with one count of first-degree premeditated murder and with one alternative count of first-degree felony murder; Defendant having made an oral motion for directed verdict arguing that she owed no legal duty to aid the victim; the prosecution having responded that Defendant was responsible as an aider and abettor to the kidnapping and murder that formed the basis for the first-degree felony murder count, and further arguing that Defendant had assumed a legal duty to aid the victim; this Court having heard these respective arguments on July 16 and 17, 1991, and having fully considered both the arguments and the submitted case law offered by the parties in support, and this Court being otherwise fully advised in the premises:
>
> IT IS ORDERED that, as a matter of law, Defendant owed no legal duty to the victim and therefore could not be convicted of either charge as a matter of law.
>
> IT IS FURTHER ORDERED that entry of the directed verdict and all further proceedings in the trial are stayed until

---

[2] Hogans was tried and convicted in a separate proceeding that is not relevant to this appeal.

August 2, 1991, to permit the prosecution to seek appellate review of this legal ruling.

IT IS FURTHER ORDERED that Defendant is granted a $10,000 personal bond until further order of this Court.

IT IS FURTHER ORDERED that the jury is not discharged, but instead is ordered to return to their daily lives while the trial is adjourned and until summoned by this Court to return for completion of the proceedings, and is instructed that they are to continue to refrain from discussing this case, reading about this case, or listening to any news reports concerning this case.

IT IS SO ORDERED.

The prosecutor filed an appeal with the Court of Appeals, which, on August 2, 1991, issued an order stating in relevant part:

Pursuant to MCR 7.205(D)(2), the Court orders that that part of the lower court order of July 19, 1991 which holds that defendant could not legally be convicted of felony murder is reversed and set aside, and this case is remanded for further proceedings consistent herewith. See MCL 767.39; MSA 28.979, *People v Kelly*, 423 Mich 261, 278-279 [378 NW2d 365] (1985), and *People v Aaron*, 409 Mich 672, 733-734 [299 NW2d 304] (1980).

On August 16, 1991, this Court denied leave to appeal that order. 437 Mich 1060.

On remand, the trial judge recalled the original jury, but ultimately discharged it on the basis of what the judge characterized as manifest necessity, after concluding that the original jurors had insufficient memory of the proceedings. Accordingly, a new jury was empaneled, a new trial was conducted, and defendant was convicted of involuntary manslaugh-

ter.[3] Defendant received a sentence of seven to fifteen years.

On appeal, a unanimous panel of the Court of Appeals reversed the conviction, holding that it "constitutes a violation of her constitutional protections against double jeopardy." 208 Mich App 648, 649; 528 NW2d 208 (1995). Relevant to the issue actually presented in this appeal, the Court of Appeals opinion states:

> The question presented in this appeal is whether a trial court may avoid application of double jeopardy by staying entry of the order granting the directed verdict pending an appeal by the prosecutor. We conclude that such a procedural device cannot be used as a means of avoiding defendant's constitutional protection against double jeopardy.
>
> *     *     *
>
> Although the court couched the order as a simple legal question and made an effort to avoid double jeopardy problems by keeping the original jury empaneled, the legal import of this holding was a directed verdict of acquittal. The court found that the prosecutor failed to establish an essential element of his case. The court judged defendant's case on the merits and made a finding of insufficiency. This is precisely the type of ruling that is not appealable. [*Id.* at 650-651.]

We granted leave, 450 Mich 971 (1996), and now affirm.

II

In *Fong Foo v United States*, 369 US 141; 82 S Ct 671; 7 L Ed 2d 629 (1962), the trial court, during presentation of the prosecutor's case in chief, "directed

---

[3] MCL 750.321; MSA 28.553.

the jury to return verdicts of acquittal as to all the defendants, and a formal judgment of acquittal was subsequently entered." *Id.* at 142. On appeal, the United States Court of Appeals for the First Circuit held that the district court was without power to direct the acquittals, and ordered the case remanded to the trial court. On further appeal, the United States Supreme Court held as follows: "The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, '[t]he verdict of acquittal was final, and could not be reviewed . . . without putting [the petitioners] twice in jeopardy, and thereby violating the constitution.' " *Id.* at 143 (citing *United States v Ball*, 163 US 662, 671; 16 S Ct 1192; 41 L Ed 300 [1896]).

In *United States v Martin Linen Supply Co*, 430 US 564, 571; 97 S Ct 1349; 51 L Ed 2d 642 (1977), the United States Supreme Court reaffirmed this principle from *Ball* and *Fong Foo*, stating: "[W]e have emphasized that what constitutes 'an acquittal' is not to be controlled by the form of the judge's action. Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." (Citations omitted.)[4]

In *People v Anderson*, 409 Mich 474, 486; 295 NW2d 482 (1980), this Court acknowledged and applied this legal principle:

> To be sure, the judge did not say that he was directing a verdict, and no formal judgment of acquittal was entered.

---

[4] This principle was more recently reaffirmed in *Smalis v Pennsylvania*, 476 US 140; 106 S Ct 1745; 90 L Ed 2d 116 (1986).

The determination of what the judge did, however, does not turn on how the judge characterizes his actions. "[T]he trial judge's characterization of his own actions cannot control the classification of the action."[24] What constitutes an "acquittal" is not controlled by the form of the judge's action.[25]

To decide how a trial judge's action should be characterized, the reviewing court "must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."[26] There is an acquittal and retrial is impermissible when the judge "evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction."[27]

---

[24]*United States v Scott* [437 US 82, 96; 98 S Ct 2187; 57 L Ed 2d 65 (1978)], quoting *United States v Jorn* [400 US 470, 478, n 7; 91 S Ct 547; 27 L Ed 2d 543 (1971)] (plurality opinion). See *United States v Martin Linen Supply Co, supra.* . . .

[25]*United States v Martin Linen Supply Co, supra*, p 571.

[26]*Id.*

[27]*Id.*, p 572. See *People v Hampton*, 407 Mich 354, 385-386; 285 NW2d 284 (1979) (RYAN, J.).

---

The application of this law to the facts of this case is straightforward.

### III

The prosecutor's attempt at revisionist history of the principles underlying the Double Jeopardy Clause notwithstanding, the controlling case law, of both the United States Supreme Court and this Court, is clear and unambiguous.[5] The trial court's grant of defendant's motion for directed verdict bars any further proceedings relative to the charges brought against

---

[5] In this regard, we note the prosecutor's failure to even cite, let alone address on the merits, this Court's controlling opinion in *People v Anderson, supra*.

defendant. The trial court's attempt to circumvent the
clear dictates of double jeopardy jurisprudence by
purportedly staying the effect of its legal determina-
tion is without any effect whatsoever. The trial court's
decision not to discharge the jury is also without any
legal effect.

· Essential to our decision is the fact that the trial
court's July 19, 1991, order was a binding legal reso-
lution, based on the trial judge's evaluation of all the
evidence presented by the prosecution in its case in
chief, of the two counts brought against defendant,
under both a direct theory and an aiding and abetting
theory. The fact of this ruling precludes appellate
inquiry into its legal correctness, *Martin Linen Sup-
ply, supra* at 571, and, accordingly, completely under-
mines the prosecutor's law-of-the-case argument.

The dissent's strained reading of *Sanabria v United
States*, 437 US 54; 98 S Ct 2170; 57 L Ed 2d 43 (1978),
and *United States v Scott*, 437 US 82; 98 S Ct 2187; 57
L Ed 2d 65 (1978), obfuscates the clear (and clearly
stated) standard for what constitutes an acquittal for
purposes of the double jeopardy clause: "[W]hether
the ruling of the judge, whatever its label, actually
represents a resolution, correct or not, of some or all
of the factual elements of the offense charged." *Mar-
tin Linen Supply*, 430 US 571. The dissent imagines a
"lack of clarity generated by *Sanabria*," *post*, p 638,
but, even if this were true, it would still be irrelevant
to our inquiry here because the applicable standard
comes from *Martin Linen Supply*, not *Sanabria*, as
the dissent acknowledges: "The *Sanabria* Court spe-
cifically referred to the *Martin Linen* test for defining
an acquittal . . . ." *Post*, p 638.

The dissent appears to read the *Martin Linen* standard as if the phrase "correct or not" refers to the factual truth of the prosecution's evidence, a determination completely outside the trial court's purview in a jury trial when considering a defendant's motion for directed verdict. When ruling on a motion for directed verdict, a trial court must, as this trial court did, view the prosecution's evidence in the light most favorable to the prosecution. Accordingly, the trial court cannot make an erroneous factual resolution. The phrase "correct or not" refers to all aspects of the trial court's ultimate legal decision, including even cases where the trial court is factually wrong with respect to whether a particular factor is an element of the charged offense. As discussed below, however, it is not clear that this situation even exists in the case at bar.

The prosecutor also argues that the Court of Appeals erred in that it "failed to consider . . . that the trial court in the instant case was ruling on the underlying *legal* basis for a determination of the Defendant's criminal culpability—not on the evidentiary sufficiency of the prosecution's proofs. The question whether the prosecution could proceed on a theory of 'legal duty' was not dependent on the proofs presented at trial and should have been challenged by the defense *prior* to trial rather than in a motion for directed verdict at the close of the prosecutor's proofs." (Emphasis in original.) We find this argument to be without merit.

The text of the trial court's order makes it clear that, in granting defendant's motion for directed verdict, the trial judge considered all the factual evidence proffered by the prosecution and concluded

that that factual evidence, as a matter of law, was insufficient to permit the jury to convict defendant of the charges brought, under either theory.[6]

The dissent relies on a principle narrowly applied in *People v Coleman*, 350 Mich 268; 86 NW2d 281 (1957), a principle not logically operative under the circumstances imagined by the dissent. In *Coleman*, the defendant was charged with attempt to obstruct justice: in particular, the attempt to dissuade a witness from testifying at a trial through the use of verbal threats. This Court noted the defendant's argument that the relevant criminal statute did not apply to him because his alleged actions constituted only "evil intent unaccompanied by some overt act going directly toward the consummation of a crime." *Id.* at 280. This Court responded as follows:

> But what, here, is the crime? It is the attempt to dissuade, which may be accomplished by words as well as physical act of violence. That words themselves may be overt acts *under some circumstances*, in fact overt acts sufficient to constitute crimes, is well settled. [*Id.* (emphasis added).]

In support of this statement of law, the *Coleman* Court cited *People v Ruthenberg*, 229 Mich 315; 201 NW 358 (1924), a case in which the defendant was charged under a criminal syndicalism statute that made punishable as a felony the advocacy "by word of mouth or writing" of the use of crime, sabotage, violence or other unlawful method of terrorism as a

---

[6] Despite the prosecutor's protestations to the contrary, the text of the trial court's order and the transcript of the oral arguments on defendant's motion show that the trial judge was fully aware of the prosecutor's aiding and abetting theory, and included it in the grant of defendant's motion for directed verdict.

means of accomplishing industrial or political reform. *Id.* at 320. No one would dispute that words can constitute the actus reus where the crime is the attempt to dissuade (as in *Coleman*), or where the crime is advocacy by word of mouth of a certain doctrine (as in *Ruthenberg*). But the use by the unanimous *Coleman* Court of the limiting phrase "under some circumstances," when read fairly in its proper context, belies the dissent's attempted application of *Coleman* to the case at bar. The testimony by one witness at trial that she told defendant she thought she heard screams coming from the trunk and that defendant said she was "crazy" is not evidence of "an affirmative act performed by defendant" relevant to the prosecution's case against defendant. It is, of course, relevant to whether defendant actually had knowledge that the victim was confined in the trunk, which was the reason the prosecution introduced this evidence at trial. And it is evidence of which the trial court was aware when it made its ultimate legal ruling.

But even if the dissent were correct that the narrow holding of *Coleman* is applicable in the instant case (which, as just discussed, is not the case), that does not change the fact that the prosecution had presented all the evidence it planned on presenting and had formally concluded its case in chief. Accordingly, the trial court was fully aware of all the evidence, and apparently considered all that evidence, before reaching its ultimate legal conclusion. The judge " 'evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction' . . . ." *Anderson*, 409 Mich 486, quoting *Martin Linen Supply*, 430 US 572. This constitutes an acquittal for purposes of the double jeopardy clause,

whether "the acquittal was based upon an egregiously erroneous foundation," *Fong Foo*, 369 US 143, or not. If acquittals include "egregiously erroneous" decisions (as in *Fong Foo*), then they surely include merely arguable errors such as the one presented in the case at bar.

The dissent ignores the significant fact that the prosecution's case was grounded solely on the premise that defendant had knowledge of the victim's confinement in the trunk and did nothing to free the victim. In a very real sense, the dissent's focus on the fact that "duty" is not a specifically enumerated element of kidnapping is not significant and, under the actual facts presented here, a distinction without a difference. The prosecution never proffered a theory or any evidence that defendant aided in the initial confinement of the victim in the trunk. The prosecution's case, its most fundamental basis for charging defendant under both the direct theory and the aiding and abetting theory, rested entirely on the allegation that defendant acquired knowledge that the victim was confined in the trunk and became complicit in the criminal endeavor when she failed to act to free or otherwise aid the victim. And if guilt can accompany a failure to act—that is, guilt by omission—then, obviously, it can only be so because the guilty party had an obligation to act in some way, was legally compelled to act in some way, had a duty to act in some way: A rose by any other name . . . . .

With regard to the prosecutor's claim that defendant should have brought a motion before trial, we briefly address it. This case has nothing to do with whether the prosecutor *could* proceed on a theory of legal duty; the decision of what theory (or theories)

to proceed on is solely within the province of the prosecutor. The reality of this case is that the prosecutor chose to proceed on the theory that defendant was guilty of the charges brought against her because she had a legal duty to the victim that she failed to fulfill. The prosecutor then presented its evidence and, after considering all that evidence, the trial court ruled that it was legally insufficient to support a conviction of the charges brought against defendant. This ruling by the trial court is completely dispositive of this case for purposes of the Double Jeopardy Clause.

IV

We affirm the decision of the Court of Appeals and remand this case to the circuit court for entry of the order granting defendant's motion for directed verdict.

BRICKLEY, C.J., and LEVIN and MALLETT, JJ., concurred with CAVANAGH, J.

BOYLE, J. (*dissenting*). Today the majority affirms a Court of Appeals decision that the defendant was acquitted when the trial judge ruled, without discharging the jury, "as a matter of law, Defendant owed no legal duty to the victim and therefore could not be convicted of either charge as a matter of law." A decision that operates to bar prosecution because of an erroneous legal ruling by a trial judge is so contrary to sound public policy that it should be rejected unless compelled. The majority's result is not compelled by decisions of the United States Supreme Court. I therefore dissent and would hold that defendant's retrial and conviction was not barred by the

Double Jeopardy Clause of the Fifth Amendment of the United States Constitution.

I

The Double Jeopardy Clause prohibits retrial after a directed verdict of acquittal. *People v Anderson*, 409 Mich 474, 492; 295 NW2d 482 (1980). By contrast, where a defendant brings about the termination of a proceeding on a basis unrelated to factual guilt or innocence, retrial is generally permitted. *Id.* at 485. Thus, decisions of the United States Supreme Court interpreting the Double Jeopardy Clause have focused on the distinction between dismissals based on determinations of facts and dismissals based on legal conclusions. *United States v Martin Linen Supply Co*, 430 US 564, 571; 97 S Ct 1349; 51 L Ed 2d 642 (1977); *United States v Scott*, 437 US 82; 98 S Ct 2187; 57 L Ed 2d 65 (1978).

In *Martin Linen*, the Court, while noting that what constitutes an acquittal is not to be controlled by the form of the judge's action, observed that, where a government appeal poses no threat of successive prosecution, the Double Jeopardy Clause is not offended.[1] *Id.* at 571. This indicates that a judicial ruling is an acquittal "only when, in terminating the pro-

---

[1] Under *United States v Jenkins*, 420 US 358, 370; 95 S Ct 1006; 43 L Ed 2d 250 (1975), quoted in *Martin Linen, supra* at 570, government appeal was barred where "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged," would be required. This test was explicitly overruled in *Scott*, when the Court stated:

Here, "the lessons of experience" indicate that Government appeals from midtrial dismissals requested by the defendant would significantly advance the public interest in assuring that each defendant shall be subject to a just judgment on the merits of his case, without "enhancing the possibility that even though innocent

ceeding, the trial court actually resolves in favor of the defendant a factual element *necessary for a criminal conviction." United States v Maker,* 751 F2d 614, 622 (CA 3, 1984), cert den 472 US 1017 (1985) (emphasis added). Thus, as Professor Wright's treatise has construed the Court's jeopardy jurisprudence, "[s]o long as there has not been a finding against the government on any issue of fact required to establish guilt on the correct legal theory, appeal could easily seem appropriate." 15B Wright, Miller & Cooper, Federal Practice & Procedure (2d ed), § '3919.5, p 662.

In *Maker,* the defendants were charged with a single insurance fraud scheme related to two separate automobile accidents. The district concluded that the statute required advance planning of the second accident at the time of the first and dismissed the charge during trial on the basis of the insufficiency of the government's evidence to prove one scheme rather than two. Finding this to be an "element of" the government's case, the trial court decided that the government did not have "sufficient evidence" to prove this "element." *Maker* at 619. While acknowledging that the United States Supreme Court did not provide significant direction on how the test should be applied, *id.* at 622, the United States Court of Appeals for the Third Circuit read *Martin Linen* and its progeny, *Scott,* to require an acquittal only when the trial court's action, whatever its form, is a resolution in the

he may be found guilty." . . . Accordingly, the contrary holding of *United States v Jenkins* is overruled. [*Scott* at 101.]

The majority fails to explain why the defendant's midtrial request for a dismissal, which did not result in an order resolving a factual element, see below, is not governed by *Scott's* express indication that such requests are reviewable.

defendant's favor, correct or not, of *"a factual element necessary for a criminal conviction." Maker* at 622. (Emphasis added.) As in the case before us, the trial court had dismissed the charge because the government had not alleged facts sufficient to prove all the legal elements that it believed were necessary to sustain conviction. Likewise, as in the case before us, the court then made what is "at least arguably, a factual determination," that the government could not prove the legal element which the trial court thought necessary for conviction. *Id.* at 623.

The court found that the trial court's arguable factual finding did not "actually determine in [the defendant's] favor any of the essential elements of the crime with which he was charged," because the trial court's legal determination about the elements of the charge was incorrect. *Id.* The court reasoned:

> Our conclusion that an appeal is not barred in this case is consistent with the policies underlying the double jeopardy clause. This is not a case in which a second trial is permitted "for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v United States,* 437 US 1, 11; 98 S Ct 2141, 2149; 57 L Ed 2d 1 (1978). Instead, this is a case in which the district court, as the result of a legal error, determined that the government could not prove a fact that is not necessary to support a conviction. To preclude an appeal in this case would deprive the public "of its valued right to 'one complete opportunity to convict those who have violated its laws.' " *Scott, supra* at 100, quoting *Arizona v Washington,* 434 US 497, 509; 98 S Ct 824, 832; 54 L Ed 2d 717 (1975). [*Maker, supra* at 624.]

The district court had come to two conclusions, one legal and the other apparently factual. Appeal and

retrial were not barred, however, because neither was relevant to an essential element of the charge.

The *Maker* court relied principally on *Scott* and decisions interpreting the decision in that case. *Maker* at 622.[2] In *Scott*, the defendant claimed impermissible preindictment delay and moved once before trial and twice during trial for dismissal of two counts charging federal drug offenses. The trial court granted the defendant's motion at the close of the evidence and sent the remaining count to the jury. Upon the jury's acquittal on the third count, the government sought appeal of one of the dismissals. *Id.* at 84.

The United States Supreme Court held that appeal was permissible and "that where the defendant himself seeks to have the trial terminated without any submission to either judge or jury as to his guilt or innocence, an appeal by the Government from his successful effort to do so is not barred" by statute or double jeopardy. *Id.* at 101. In reaching this conclusion, the Court reiterated its holding in *Martin Linen* that an acquittal requires that the judge's ruling " 'actually represent[ ] a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged . . . .' " *Scott, supra*

---

[2] For example, in *United States v Moore*, 198 US App DC 296; 613 F2d 1029 (1979), cert den 446 US 954 (1980), "the court allowed the government's appeal despite the fact that, in dismissing the case, the district court determined facts that were relevant to, but not decisive of, one element of the crime." *Maker, supra* at 623. The *Moore* court held there was no acquittal of the defendant under *Scott* "unless, in ruling on the applicability of the defense, the District Court somehow reached a resolution of one or more of the elements of the offense with which he is charged." See also *Wilkett v United States*, 655 F2d 1007, 1012 (CA 10, 1981), cert den sub nom *Conklin v United States*, 454 US 1142 (1982) (finding no acquittal where the termination of the trial was due to failure "to prove an element which is more procedural than substantive, namely, venue").

at 97 (citing *Martin Linen, supra*). *Scott* thus stands for the proposition that government appeals from dismissals are permissible if two requirements are satisfied: (1) the trial court did not rely on the sufficiency of the evidence to support a conviction of the offense charged, and (2) the .defendant sought dismissal not related to factual guilt or innocence. Wright, *supra* at 651.

Admittedly, other cases call into question the definition of an acquittal as a finding that actually resolves in the defendant's favor a factual element necessary for criminal conviction. In *Sanabria v United States*, 437 US 54, 64; 98 S Ct 2170; 57 L Ed 2d 43 (1978), where the trial court erroneously excluded evidence and granted a defense motion to acquit, the Court held that jeopardy barred appeal (and retrial), finding that the ruling below was "properly . . . characterized as an erroneous evidentiary ruling which led to an acquittal for insufficient evidence." *Id.* at 68-69. This erroneous exclusion of evidence caused "a failure of proof on a key 'factual element of the offense charged . . . .' " *Id.* at 71. The Court stated that "when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." *Id.* at 64. Criticizing the holding, Professor Wright observes that the Court

> found that the district court had relied on its erroneous interpretation of the indictment in arriving at a doubly erroneous decision to exclude . . . evidence; and had then entered a judgment of acquittal as to the entire count for lack of sufficient evidence. There is no more reasoning offered than the conclusion that the order must be treated

as a fact-based acquittal, and that no appeal can ever be taken from a fact based acquittal. [Wright, *supra* at 664.]

Despite the Court's statements in *Martin Linen* and *Scott* that "what constitutes 'an acquittal' is not to be controlled by the form of the judge's action," *Martin Linen, supra* at 571, Wright concludes that *Sanabria* provides little more than an "unilluminated reliance on the acquittal phrase." *Id.* at 664. The commentators continue:

It is far from self-evident that double jeopardy principles must preclude appeal and retrial as to every judgment that rests upon insufficiency of the evidence, even though the insufficiency ruling results from erroneous legal rulings that lead to complete disregard of sufficient evidence . . . . [*Id.*]

Whatever might be said of the lack of clarity generated by *Sanabria*,[3] and *Smalis v Pennsylvania*, 476 US 140; 106 S Ct 1745; 90 L Ed 2d 116 (1986), neither compels a conclusion that the bar of jeopardy attaches because of an erroneous legal ruling. The *Sanabria* Court specifically referred to the *Martin Linen* test for defining an acquittal, *Sanabria* at 71, and that the decision in the case turned on the fact that "[p]etitioner was found not guilty for a failure of proof on a key 'factual element of the offense

---

[3] It is interesting to note that these apparently competing standards for determining when there has been an acquittal appear simultaneously in volume 437 of the United States Reports. In *Sanabria*, Justice Blackmun's dissent states that "the case will afford little guidance as precedent in the Court's continuing struggle to create order and understanding out of the confusion of the lengthening list of its decisions on the Double Jeopardy Clause." *Id.* at 80. Likewise, Justice Brennan's dissent in *Scott* states, "It is regrettable that the Court should introduce such confusion in an area of the law that, until today, had been crystal clear." *Id.* at 116.

charged': that he was 'connected with' the illegal gam-
bling business." *Id.* The judge's decision was an
acquittal because it satisfied the requirements of the
*Martin Linen* test. Thus, even accepting the rule cho-
sen by the majority, that an acquittal bars appeal and
retrial, no matter how erroneous the underlying legal
rulings, the dismissal *must* still go to an essential or
"key" element of the charged offense, otherwise, it is
not an acquittal at all. The error in the majority's anal-
ysis here is that it ignores the threshold definition of
an acquittal, despite the fact that *Sanabria* itself
incorporated this very requirement.[4]

## II

The trial judge here viewed the ruling as a legal
conclusion, not a determination of the factual ele-
ments. He applied the proper legal presumption to the
people's proof, *People v Hampton*, 407 Mich 354; 285
NW2d 284 (1979), characterized the ruling as a mat-
ter of law, and stayed his order to allow an interlocu-
tory appeal. It is clear that at the stage in the pro-
ceedings when the order was entered, the court and
both counsel agreed that the order was a dismissal of
the counts of the information charging first-degree
murder. The language of the court's order, unlike that
of *Sanabria*, although it addressed some facts, did
not resolve any "key" or "essential" factual element of

---

[4] Similarly, in *Smalis*, the trial court dismissed the case because it con-
cluded that the prosecution's evidence was insufficient to show what the
judge believed to be the required degree of recklessness under the Penn-
sylvania homicide statute. *Smalis, supra* at 144. The Court concluded that
this was an acquittal subject to double jeopardy principles, despite the
judge's erroneous interpretation of the statute. *Id.* Like the ruling in
*Sanabria*, there was an acquittal because the judge's ruling clearly related
to a factual element—recklessness.

the offenses charged because legal duty is not an element of either offense.

Defendant was tried on the charges of felony murder and premeditated murder, MCL 750.316; MSA 28.548. The underlying offense for the felony-murder charge was kidnapping, MCL 750.349; MSA 28.581. To establish first-degree premeditated murder, the prosecution must prove the following elements: (1) the defendant intentionally killed the victim, and (2) the act of killing was deliberate and premeditated. See *People v Wofford*, 196 Mich App 275, 278; 492 NW2d 747 (1992). To establish felony murder, the prosecution must prove the following elements: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies enumerated in MCL 750.316; MSA 28.548. See *People v Thew*, 201 Mich App 78, 85; 506 NW2d 547 (1993). To establish kidnapping, the prosecution must prove the following elements: (1) the defendant wilfully, maliciously, and without lawful authority, (2) forcibly or secretly confined or imprisoned any other person within this state against his will, or forcibly carried out or sent such person out of this state, or forcibly seized or confined, or inveigled or kidnapped any other person, (3) with intent to extort money or other valuable thing thereby, or with the intent either to cause such person to be secretly confined or imprisoned in this state against his will, or to cause such person to be in any way held to service against his

will. *People v Jaffray*, 445 Mich 287, 297; 519 NW2d 108 (1994).

Legal duty is not a factual element of any of these offenses. Rather, legal duty concerns the basic premise of criminal law that no crime can be committed by bad thoughts alone:

> Bad thoughts alone cannot constitute a crime; there must be an act, or an omission to act where there is a legal duty to act [actus reus]. Thus the common law crimes are defined in terms of act or omission to act, and statutory crimes are unconstitutional unless so defined. [1 LaFave & Scott, Substantive Criminal Law, § 3.2, p 272.]

The relationship between duty and the charged offenses was that if an element of each offense did not require an actus reus, which consists of either an affirmative act or an omission to act when a duty to act exists, then the statute codifying the offense is unconstitutional. *Id.* Duty is a question of law, not a question of fact. *Id.*, § 3.3, p 284, n 8, citing *People v Beardsley*, 150 Mich 206; 113 NW 1128 (1907). Thus, the trial court's ruling constituted a legal determination that, given the evidence presented by the prosecution, it could not establish the actus reus of premeditated murder or felony murder as a matter of law by showing an omission to act (one of two legal theories to show actus reus).

Although the prosecution focused on the defendant's failure to let the victim out of Mr. Hogans' trunk, the prosecutor also presented evidence to establish the actus reus of the charged offenses by showing an affirmative act by defendant. There was evidence presented at trial of an affirmative act performed by defendant in that defendant told a friend who asked

her about screams coming from the trunk that she was "crazy." Words alone can constitute overt acts. *People v Coleman*, 350 Mich 268, 280; 86 NW2d 281 (1957). The trial court did not discuss this evidence in granting defendant's directed verdict motion. Thus, even if the trial judge can be said to have reached "an arguably factual" conclusion regarding the state of the proofs, as in *Maker*, retrial was permissible because the factual finding did not relate to any factual element that the prosecution was required to prove. The protective purposes underlying double jeopardy were not implicated by the trial court's ruling.

The majority's conclusion, which deprives the public of its valued right to have one complete opportunity to vindicate its laws, underscores that trial judges must proceed with extreme caution in making interlocutory rulings after jeopardy has attached.[5] Although there is no indication that jeopardy principles have been manipulated here, the potential for manipulation exists whenever matters that are capable of pretrial resolution[6] are delayed or raised only

---

[5] In *Scott*, the Court noted, "[I]t is entirely possible for a trial court to reconcile the public interest in the Government's right to appeal from an erroneous conclusion of law, with the defendant's interest in avoiding a second prosecution. In *United States v Wilson*, 420 US 332; 95 S Ct 1013; 43 L Ed 2d 232 (1975), the court permitted the case to go to the jury, which returned a verdict of guilty, but it subsequently dismissed the indictment for preindictment delay on the basis of evidence adduced at trial." *Scott, supra* at 100, n 13. See also *United States v Ceccolini*, 435 US 268; 98 S Ct 1054; 55 L Ed 2d 268 (1978); *United States v Cicco*, 938 F2d 441 (CA 3, 1991). Had this case been so postured, the defendant's legal duty claim would have been preserved for postverdict appeal, and the prosecution could have contested the correctness of the trial court's ruling without any potential double jeopardy problem.

[6] For example, in *Ceccolini*, n 5 *supra*, the trial court granted a motion to suppress testimonial evidence of guilt *after* making a finding of defendant's guilt and set aside the guilty verdict because of the ruling on the suppression motion. Appeal was allowed because reversal would require

after jeopardy has attached. Given today's result, such concerns can be safely addressed only before trial or, alternatively, by denying the motion made at the conclusion of the prosecution's proofs,[7] thus allowing the trier of fact to pass on the facts and granting a motion resolving a legal issue as a judgment notwithstanding the verdict. The rigidity of the first course and the duplicity of the second only underscore the lack of wisdom in holding that an erroneous decision of law bars further prosecution.

III

I would hold that the trial court's ruling was not an acquittal and that the prosecution and conviction of the defendant did not constitute double jeopardy under the United States Constitution. I would reverse the decision of the Court of Appeals and affirm the jury's verdict.

RILEY and WEAVER, JJ., concurred with BOYLE, J.

---

nothing more than reinstatement of the verdict. See also *United States v Kopp*, 429 US 121; 97 S Ct 400; 50 L Ed 2d 336 (1976); *United States v Morrison*, 429 US 1; 97 S Ct 24; 50 L Ed 2d 1 (1976); *United States v Rose*, 429 US 5; 97 S Ct 26; 50 L Ed 2d 5 (1976).

[7] MCR 6.419 may be problematic in this regard because it prohibits reservation of the court's decision on a defense motion for a directed verdict brought at the close of the prosecution's case.