*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEVEN EDWARD SHERBURNE,

Defendant-Appellant.

UNPUBLISHED
August 19, 2021

No. 351262
Shiawassee Circuit Court
LC No. 2014-006468-FC

Before: STEPHENS, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

This case is before us for a second time for consideration as on leave granted.[1] Steven Sherburne pleaded nolo contendere to second-degree criminal sexual conduct (CSC-2), MCL 750.520c(2)(b) (sexual contact with a victim less than 13 years of age by a defendant over 17 years of age), for sexually abusing his girlfriend's four-year-old daughter, JA. Sherburne had originally been charged with two counts of first-degree criminal sexual conduct (CSC-1), MCL 750.520b(2)(b) (sexual penetration of a victim less than 13 years of age by a defendant over 17 years of age), but the prosecution dropped these counts in exchange for Sherburne's CSC-2 plea.

The trial court sentenced Sherburne to 41 to 63 years' imprisonment—a 22-year upward departure from the top end of the minimum sentencing guidelines range for CSC-2, and at the upper end of the sentencing range for CSC-1 offenders with Sherburne's criminal background. On remand from this Court, the trial court imposed the same sentence. The trial court abused its discretion by violating the principle of proportionality described in *People v Milbourn*, 453 Mich 630, 636; 461 NW2d 1 (1990). We again vacate Sherburne's sentence and remand for resentencing.

---

[1] *People v Sherburne*, 506 Mich 916 (2020)

## I. BACKGROUND

The prosecutor charged Sherburne with sexually abusing two young girls in two separate lower court files. In the first, Sherburne was charged with CSC-2 for touching five-year-old DS in the vaginal area over her underwear. He pled nolo contendere to that charge, the trial court sentenced him within the guidelines range, and we affirmed. See *People v Sherburne*, unpublished opinion of the Court of Appeals, issued August 14, 2018 (Docket No. 329174), p 1 *(Sherburne I)*. That sentence is not at issue.

In the second matter, Sherburne faced charges for sexually abusing JA on two separate occasions—once in January 2014 and once in March 2014. On one of these occasions, Sherburne touched JA on her genitals. In the other, Sherburne penetrated JA's rectum with his penis and forced her to perform fellatio. The prosecutor charged him with one count of CSC-2 and two counts of CSC-1 in violation of MCL 750.520b(2)(b) (sexual penetration of a victim under 13 by a defendant over 17).

Sherburne and the prosecutor struck a plea agreement without a sentencing component. Sherburne agreed to plead nolo contendere to one count of CSC-2 as a fourth habitual offender, MCL 769.12, and the prosecution agreed to drop the CSC-1 charges. Before Sherburne entered his plea, the trial court informed him that it could impose a life sentence because he was a fourth-habitual offender. Sherburne confirmed that he understood and entered a plea of nolo contendere to one count of CSC-2.

Sherburne's minimum sentencing guidelines range for the CSC-2 offense was 58 to 228 months' (4.83 to 19 years') imprisonment. But the trial court departed upward, sentencing him to 492 to 756 months' (41 to 63 years') imprisonment—a 22-year upward departure. Because the sentencing occurred before *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015) issued, the trial court articulated what it believed to be substantial and compelling reasons to support this departure. In general, the trial court reasoned that the guidelines did not adequately account for Sherburne's failure to be rehabilitated, the young age of the complainants, and the toll the crimes took on the complainants' wellbeing.[2]

Sherburne sought leave to appeal, and ultimately we vacated his sentence and remanded to the trial court. Although the court had "stated several, well-founded reasons to support departing upward from the sentencing guidelines," we explained, the court had not "adequately connect[ed] those reasons to the particular 22-year departure made in this case." *Sherburne I*, unpub op at 1. We instructed the trial court to explain on remand why the extent of its departure from the guidelines complied with proportionality principles. *Id*. at 6.

On remand, the trial court imposed the same 41-to-63-year sentence, offering three reasons for the extent of its departure from the guidelines.

First, the trial court explained that it had used the minimum sentencing ranges for class A offenses (offense grid A), MCL 777.62, as a benchmark to determine a proportionate departure

---

[2] See *Sherburne I*, unpub op at pp 2-3, for further detail.

sentence, despite that Sherburne's crime of conviction was a class C offense. While Sherburne had pled guilty to CSC-2, the court found that a preponderance of the evidence supported that he had actually committed two acts of CSC-1. CSC-1 offenses, the trial court reasoned, are calculated using offense grid A. See MCL 777.16y. Had Sherburne's minimum sentencing guidelines been calculated using offense grid A, his guidelines range would have been 170 to 570 months' imprisonment. The trial court "found and fixed a sentence within that range," settling on 492 months (41 years). According to the trial court, this did not deprive Sherburne of the benefit of his plea bargain, because if convicted of CSC-1, Sherburne would have received a mandatory sentence of 25 years, and the court could have imposed two mandatory 25-year sentences running consecutive to each other.

Second, the trial court reasoned that requiring Sherburne to serve a minimum term of 41 years would provide the complainants with "ample opportunity to confront what was done to them," and to "to engage in treatment." Also, "[i]f the parole board wishe[d] to consider [Sherburne's] release, the [complainants] would be adults and able to address the board if they so desire[d]."

Third, the trial court expressed that a 41-year sentence would ensure Sherburne's continued incarceration until he reached an age at which he would not be able to reoffend:

> With the minimum range fashioned by the Legislature, [Sherburne] would have been eligible for parole in as few as nineteen (19) years. If paroled at that point he would have been fifty-seven (57) years old and still capable of violating children of this community. At that age, he would have had both the ability and the potential opportunity to perpetuate against other children.

Sherburne again sought leave to appeal with this Court, which we denied. *People v Sherburne*, unpublished order of the Court of Appeals, entered December 19, 2019 (Docket No. 351262). Our Supreme Court remanded the case for consideration as on leave granted. *People v Sherburne*, 506 Mich 916; 948 NW2d 578 (2020). Sherburne contends that the trial court's reasoning failed to justify the extent of its departure and that the extent of the court's departure was unreasonable.

## II. ANALYSIS

We review departure sentences for reasonableness. *Lockridge*, 498 Mich at 365, 392. When assessing reasonableness, we consider whether the trial court abused its discretion by violating the principle of proportionality described in *People v Milbourn*, 453 Mich 630.

The principle of proportionality requires that a sentence be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017) (*Steanhouse II*), quoting *Milbourn*, 435 Mich at 636. For that reason, a sentencing court must take "into account the nature of the offense and the background of the offender." *Milbourn*, 435 Mich at 651.

Although advisory, when assessing the proportionality of a departure sentence, the guidelines nevertheless provide the "best 'barometer' of where on the continuum from the least to the most threatening circumstances a given case falls." *People v Dixon-Bey*, 321 Mich App 490,

530; 909 NW2d 458 (2017), quoting *Milbourn*, 435 Mich at 656. Indeed, any sentence within an offender's minimum sentencing guidelines range is presumptively proportionate to the seriousness of the offender's offense and background. *People v Posey*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345491); slip op at 9 (citation omitted).

When a sentencing court departs from the applicable guidelines range, it must explain why its departure sentence is more proportionate to a given offense and offender than a sentence within the guidelines range. *Dixon-Bey*, 321 Mich App at 524-525. In determining whether a departure sentence is proportionate, the following factors are relevant:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id.* at 525.]

If a sentencing court identifies facts supporting that a departure sentence would be more proportionate than a within-guidelines sentence, it must next determine the appropriate extent of a departure, again within a proportionality frame. In so determining, the sentencing court "must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." See *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017) *(Steanhouse III)*, vacated in part 504 Mich 969 (2019),[3] citing *Milbourn*, 435 Mich at 659-660 ("Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality.").

The trial court violated the principle of proportionality by entirely disregarding the applicable guidelines sentencing range and substituting in its place a sentence derived from an inapplicable and fundamentally disproportionate sentencing grid. The court's additional reasons for departure did not shed light on why a 41-year sentence was more proportionate than a 21-year guidelines sentence. We elaborate on these points in turn.

## A. AN INAPT SENTENCING GRID

Sherburne pleaded guilty to CSC-2 in exchange for the prosecution's dropping two CSC-1 charges involving the same complainant. During the plea colloquy, the prosecutor ("Mr.

---

[3] In *Steanhouse III*, this Court found that only one of the trial court's reasons for departing from the sentencing guidelines was valid and that the trial court had not adequately explained the extent of its departure. *Steanhouse III*, 322 Mich App at 242-243. On appeal from this Court's opinion in *Steanhouse III*, the Supreme Court did not take issue with this Court's proposition that a sentencing court must explain the extent of its departure. Our Supreme Court vacated only that part of our opinion that remanded for resentencing. It found that, "[r]ather than remanding only for resentencing, the Court of Appeals should have remanded for the trial court to either resentence or to further articulate its reasons for departure." *People v Steanhouse*, 504 Mich 969; 933 NW2d 276 (2019) *(Steanhouse IV)*.

Painter") advised the court, defense counsel, and Sherburne that he had calculated Sherburne's guidelines as 58 to 228 months. The following colloquy ensued:

> *THE COURT*: Mr. Sherburne, what he's saying is that the minimum could be just under five years, and the maximum could be what, Mr. Painter?

> *MR. PAINTER*: 228, your Honor, and that comes out to about 19 years on the upper end.

> *THE COURT*: Did you hear that?

> *DEFENDANT*: Yup.

> *THE COURT*: All right. Although the CSC Second is a maximum 15-year penalty, because you have the prior felonies, that's what we call creates a tail that could be significant, do you understand that?

> *DEFENDANT*: Yup.

> *THE COURT*: And the second file, and that's 6468, has a similar structure. You're going to plead to an additional - - or an additional count of Criminal Sexual Conduct Second Degree, which is a 15-year felony, along with the Habitual Fourth Degree, which makes it that life offense that we talked about earlier.

> *DEFENDANT*: Yup.

> *THE COURT*: And the Sentencing would be concurrent, which means you wouldn't do, you wouldn't do five to 22, then another 5 to 22, you would only do one block of time, do you understand that?

> *DEFENDANT*: Yeah.

Sherburne's plea agreement did not constrain the trial court's sentencing discretion, and the court did not need to specifically advise Sherburne that it could impose a sentence exceeding the guidelines. That said, the court and the prosecutor unambiguously communicated that Sherburne's minimum sentencing guidelines score was 58 to 228 months, and that "the maximum" that Sherburne faced was "19 years on the upper end."

When he tendered his plea, Sherburne likely understood that he was pleading to CSC-2, and that the guidelines and grid for CSC-2 would serve as the proportionality baseline for his sentence. By relying on the CSC-1 guidelines to justify the departure sentence it subsequently imposed, the trial court ignored the implicit promise made at the time of Sherburne's plea that his

sentence would be tethered to the guidelines for a CSC-2 conviction. Sherburne has not sought to withdraw his plea, however, obviating the need to further analyze its voluntariness.[4]

Nevertheless, the court's use of the CSC-1 sentencing grid to demonstrate the proportionality of the 22-year departure sentence was unreasonable. Offense grid A applies to CSC-1 offenders and those convicted of commensurate crimes such as armed robbery, first-degree child abuse, and solicitation of murder. The sentencing ranges called for on offense grid A present proportional sentencing ranges for class A offenders, but they do not supply proportionate baselines for offenders convicted of less serious crimes. Offense grid C serves that purpose in Sherburne's case.

The class C grid provides that the most severe sentence available for a fourth-habitual offender assessed the maximum of possible OV points is 62 to 228 months, the upper end being identical to the upper end of Sherburne's guidelines sentence. The class A grid, in contrast, provides for a much longer minimum sentence: 171 to 570 months. Reference to a sentencing grid that is fundamentally disproportionate to the offense and the offender does not supply a reasonable justification for the substantial extent of Sherburne's departure sentence.

At the heart of the principle of proportionality is the notion that similar offenders should receive similar sentences. See *Milbourn*, 435 Mich at 650-652; *People v Fleming*, 428 Mich 408, 426-427; 410 NW2d 266 (1987). It follows that in making sentencing and departure evaluations, the offense of conviction must be the central focus of the inquiry. The sentencing guidelines and grids inherently incorporate this proportionality principle:

> The Legislature has subscribed to this principle of proportionality in establishing mandatory sentences as well as minimum and maximum sentences for certain offenses. It has also subscribed to this principle of proportionality in establishing the statutory sentencing guidelines. Under the guidelines, offense and prior record variables are scored to determine the appropriate sentence range. Offense variables take into account the severity of the criminal offense, while prior record variables take into account the offender's criminal history. Therefore, the appropriate sentence range is determined by reference to the principle of proportionality; it is a function of the seriousness of the crime and of the defendant's criminal history. [*People v Babcock*, 469 Mich 247, 263-264; 666 NW2d 231 (2003) (citation omitted).]

---

[4] See also *Taylor v United States*, 495 US 575, 601-602; 110 S Ct 2143; 109 L Ed 2d 607 (1990) ("Also, in cases where the defendant pleaded guilty, there often is no record of the underlying facts. Even if the Government were able to prove those facts, if a guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary."); *People v McGraw*, 484 Mich 120, 134; 771 NW2d 655, 663 (2009) ("It would be fundamentally unfair to allow the prosecution to drop the fleeing and eluding charge while brokering a plea bargain, then resurrect it at sentencing in another form.").

As a rationale for using offense grid A to explain the extent of the departure, the trial court noted that Sherburne had sexually penetrated the victim twice, thereby committing CSC-1. The court earlier invoked this same fact as a ground for its departure decision; see *Sherburne I*, unpub op at 5. But the court's explanation for the extent of the departure entirely overlooks that offenders convicted of CSC-2 are subject to a substantial sentencing enhancement when the offense includes penetration. Offense variable 11, MCL 777.41, must be scored for offenders convicted of CSC-2, and provides:

(1) Offense variable 11 is criminal sexual penetration. Score offense variable 11 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Two or more criminal sexual penetrations occurred. ….. 50 points

(b) One criminal sexual penetration occurred ……….. 25 points

(c) No criminal sexual penetration occurred …………. 0 points

(2) All of the following apply to scoring offense variable 11:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense.[5]

The proportionality inquiry governing departure sentences requires courts to address two questions: "whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines," *Milbourn*, 435 Mich at 650-660, and if so, why the specific extent of the departure is more proportionate than a sentence within the guidelines would have been. *Dixon-Bey*, 321 Mich App at 525. Sherburne was assessed 50 points under OV 11 for having committed two or more sexual penetrations. Given this score, it was incumbent on the trial court to articulate a reason that the guidelines inadequately accounted for his commission of a CSC-1 offense. The court did not accomplish that task simply by sentencing Sherburne as a CSC-1 offender, as that justification would apply to many convicted of CSC-2 and was not anchored in the specific facts of this case. Sherburne's commission of a CSC-1 offense was not unique to Sherburne or the crime he committed. See *id.* at 529.

Because the guidelines contemplate that some CSC-2 offenders will have committed two or more penetrations, the sentencing grid for class C offenders provides the relevant reference point for determining a proportionate sentence. Unsurprisingly, this Court has specifically held

---

[5] The scoring of OV 11 accounts for more than half of Sherburne's 80-point OV score.

that a court may consider that a CSC-2 offender penetrated the victim in determining whether to depart from the guidelines. See *People v Armstrong*, 247 Mich App 423, 426; 636 NW2d 785 (2001) ("We also note that the prosecutor's decision, in exchange for defendant's guilty plea, to dismiss a charge of first-degree CSC, which carries a potential life sentence, and the fact that defendant was not charged with attempted CSC for trying to have the victim perform oral sex on him are additional factors that the court can consider when deciding whether departure is warranted."). But no authority supports that a Court may also *sentence* an offender convicted of CSC-2, even by guilty plea, as though the offender committed CSC-1. Although the trial court ostensibly relied on the CSC-1 grid to explain the *extent* of the departure, the court actually used the grid as the primary basis for its sentencing decision.

The appropriate length of Sherburne's proportionate minimum sentence is anchored in the sentencing guidelines and the grid for class C offenses. By relying on the grid for class A offenses, the trial court violated *Milbourn*'s admonition that the guidelines provide the frame of reference for every proportionality analysis, *Milbourn*, 435 Mich at 651-652, and instead trained its sights on a grid unconnected with Sherburne's crime of conviction. Proportionality analysis grounded in the guidelines protects against "unjustified sentence disparity," *id*. at 649, which would necessarily result if sentencing judges were permitted to select a sentence from an inapplicable grid. Moreover, the trial court's grid-shifting methodology has never been approved by this Court or our Supreme Court.

Additionally, sentencing Sherburne as a CSC-1 offender to a minimum of 41 years' imprisonment is inconsistent with his agreement to enter a guilty plea to CSC-2. Treating Sherburne as a CSC-1 offender eliminates any benefit he received from his plea bargain. The trial court is correct that if convicted of CSC-1, Sherburne would have been subject to a mandatory sentence of 25 years. Avoidance of the 25-year mandatory minimum likely factored into Sherburne's decision to plead guilty to an offense for which the longest minimum guidelines' sentence was 19 years. Although the trial court expressed that it could have sentenced Sherburne to consecutive 25-year sentences had Sherburne been convicted of CSC-1, the record does not necessarily support that consecutive sentencing would have been warranted. See *People v Norfleet*, 317 Mich App 649; 897 NW2d 195 (2016).[6]

On remand, we remind the court of our Supreme Court's admonition in *Steanhouse II*:

We repeat our directive from *Lockridge* that the guidelines remain a highly relevant consideration in a trial court's exercise of sentencing discretion that trial courts must consult and take into account when sentencing, and our holding from *Milbourn* that the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range. [*Steanhouse II*, 500 Mich at 474-475, (cleaned up).]

Further, Sherburne's was not the first plea bargain permitting a defendant to plead guilty to CSC-2 despite the existence of facts supporting a CSC-1 charge. The court failed to explain

---

[6] Whether the penetrations arose out of the same transaction is unclear in the record provided to this Court. See *People v Johnson*, 474 Mich 96, 102; 712 NW2d 703 (2006).

why this case in particular warranted more than doubling the highest guidelines sentence available. Criminal sexual conduct of any degree is a terrible crime that usually leaves the victims with permanent emotional wounds. In explaining the extent of a departure sentence in this case, on remand the court must address why the offense-related facts or the details of Sherburne's criminal history are particularly distinctive or dreadful.

## B. SPECULATION RATHER THAN FACTS

The court offered several other justifications for the extent of the departure: a need to give the young complainants "ample opportunity to confront what was done to them," "to engage in treatment," and to "address the parole board" as adults. The trial court's conclusion that the complainants would need 41 years to recover enough to benefit from treatment was both speculative and likely exaggerated. Cf. *Fleming*, 428 Mich at 422 (holding that a sentencing court could not consider the possibility of an offender's early release because this required the trial court to speculate rather than to fashion a sentence based on the evidence before it). "[I]t is essential that courts consider only complete and accurate information when imposing a sentence[.]" *Id*., quoting *People v Humble*, 146 Mich App 198, 201; 379 NW2d 422 (1985). Here, no information of record allowed the court to accurately quantify how long the complainants would need to process what happened to them. The youngest of the complainants will be 18 years old in nine years. The court's conclusion that it will take an additional two or three decades to recover enough to speak to the parole board is simply not rooted in any facts.

The trial court also erred by justifying the extent of its departure on the need to incarcerate Sherburne until he reaches an age at which he would be unable to reoffend. Although a sentencing court may consider an offender's potential for rehabilitation, we have previously held that enhancing an offender's sentence to incarcerate him or her "beyond the age of violence" is impermissible. *People v Fisher*, 176 Mich App 316, 317-318; 439 NW2d 343 (1989). While we are not precedentially bound by *Fisher*, we still find this proposition persuasive for two reasons.

Just as with determining how long a victim would need to overcome trauma, determining the age at which a defendant would be unable to reoffend requires a sentencing court to speculate. A sentencing court cannot know with any degree of certainty at what point an offender will no longer be capable of sexual violence. Again, "it is essential that courts consider only complete and accurate information when imposing a sentence." *Fleming*, 428 Mich at 422, quoting *Humble*, 146 Mich App at 201.

Even if a sentencing court's prediction as to when an offender would be unable to reoffend were accurate, allowing a sentencing court to base its sentencing decision on such a calculation would build in disparity among sentences for similar offenses and offenders solely on the basis of age. Consider a hypothetical offender with all the same characteristics as Sherburne, but 20 years older. For this offender, only a two-year departure from the top end of the guidelines would be necessary to protect society, according to the trial court. Thus, this offender would receive a substantially lower sentence than Sherburne based only on age.

## III.  CONCLUSION

The trial court abused its discretion by imposing an unreasonable departure sentence based on improper criteria.  Accordingly, we again vacate Sherburne's sentence and remand to the trial court for resentencing.  We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher