# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 22, 2010

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

139345-7 (113)

CHRISTOPHER LEE DUNCAN, BILLY JOE
BURR, JR., STEVEN CONNOR, ANTONIO
TAYLOR, JOSE DAVILA, JENNIFER
O'SULLIVAN, CHRISTOPHER MANIES, and
BRIAN SECREST,
   Plaintiffs-Appellees,

v

STATE OF MICHIGAN and GOVERNOR OF
MICHIGAN,
   Defendants-Appellants.

SC: 139345
COA: 278652
Ingham CC: 07-000242-CZ

_____/

CHRISTOPHER LEE DUNCAN, BILLY JOE
BURR, JR., STEVEN CONNOR, ANTONIO
TAYLOR, JOSE DAVILA, JENNIFER
O'SULLIVAN, CHRISTOPHER MANIES, and
BRIAN SECREST,
   Plaintiffs-Appellees,

v

STATE OF MICHIGAN and GOVERNOR OF
MICHIGAN,
   Defendants-Appellants.

SC: 139346
COA: 278858
Ingham CC: 07-000242-CZ

_____/

CHRISTOPHER LEE DUNCAN, BILLY JOE
BURR, JR., STEVEN CONNOR, ANTONIO
TAYLOR, JOSE DAVILA, JENNIFER
O'SULLIVAN, CHRISTOPHER MANIES, and
BRIAN SECREST,
   Plaintiffs-Appellees,

v

STATE OF MICHIGAN and GOVERNOR OF

SC: 139347
COA: 278860
Ingham CC: 07-000242-CZ

MICHIGAN,
          Defendants-Appellants.

_____/

        This Court's order of November 30, 2010, will be published with the following statements attached.

        KELLY, C.J. (*concurring*).

        I concur in the order granting plaintiffs' motion for reconsideration and reinstating our order of April 30, 2010.  I write separately to avoid the confusion that I believe is likely given the history of this case and the statements of the dissenting justices.

        The dissenters have yet to raise a single argument of which the Court was unaware when it originally decided this case eight months ago.  Indeed, Justice MARKMAN's dissenting statement consists almost entirely of a series of quotations from the Court of Appeals dissenting opinion.  He also claims that it is not premature to make a final decision on this case because the issues involved are fully laid out on the face of the complaint.  We rejected that precise argument in our April order.

        Nor are Justices CORRIGAN, YOUNG and MARKMAN correct that our July 16, 2010 order granting reconsideration was warranted because our April order failed to articulate a governing standard for the trial court.  Our April order affirmed only the result reached by the Court of Appeals.  Such orders are hardly earth-shattering occurrences;[1] hence, all Justices were clearly aware at the time our April order entered that we were not articulating a governing standard for the trial court.[2]  Yet no one on the Court stated a need for one.  Nothing happened between April and July that gave rise to a need for the Court to articulate a governing standard.

        Moreover, the thrust of the dissenters' position is that our failure to articulate a standard somehow makes summary disposition for defendants a more suitable outcome.  In my view, such a conclusion is tantamount to throwing up one's hands in futility in the face of a thorny legal question.  If the dissenters' concerns are genuine, why would not the proper remedy be to grant reconsideration and issue an opinion or order setting such a standard?

_____

[1] See, e.g., *Andres v Brown*, 482 Mich 985 (2008) (affirming the result reached by the Court of Appeals for different reasons); *Citizens Protecting Michigan's Constitution v Secretary of State*, 482 Mich 960 (2008) (affirming the result only of the Court of Appeals judgment without further explanation).

[2] See *Duncan v State of Michigan*, 486 Mich 1071, 1074 (2010) (KELLY, C.J., dissenting).

Finally, Justice CORRIGAN states that issuing our November 30, 2010 order without her dissenting statement constitutes an "unprecedented" act.[3] She is incorrect. Such action has in fact occurred in the past.[4] The same action was warranted in this unique case because the case (1) involves issues important to this State's jurisprudence, (2) is three years old despite the fact that discovery has not even begun, and (3) has languished in this Court for almost a year (two motions for reconsideration have been brought).

In sum, our April order was correct then and it is correct now. Therefore, I concur in the order granting plaintiffs' motion for reconsideration and reinstating our April order.

CORRIGAN, J. (*dissenting*).

I join Justice MARKMAN's dissenting statement in full. I would deny plaintiffs' motion for reconsideration of the July 16, 2010 order. I write separately to point out the procedural history that has brought us to this juncture and to further make clear the defects in the initial April 30, 2010 order that necessitated the grant of defendants' motion for reconsideration.

In this case, indigent criminal defendants in three Michigan counties brought claims alleging that they, as well as future indigent defendants, were being denied their constitutional rights to counsel and the effective assistance of counsel. After the trial court denied defendants' motion for summary disposition and granted class certification, defendants sought leave to appeal in the Court of Appeals. The Court of Appeals granted leave, and on June 11, 2009, it affirmed the trial court's denial of defendants' motion for summary disposition and the grant of class certification in a 2-1 decision. *Duncan v State of Michigan*, 284 Mich App 246 (2009). We subsequently granted leave. *Duncan v State of Michigan*, 485 Mich 1003 (2009). After hearing oral arguments in April 2010, we issued an order on April 30, 2010, vacating the trial court's grant of class certification and remanding for consideration of class certification in light of *Henry v Dow Chemical Co*, 484 Mich 483 (2009). *Duncan v State of Michigan*, 486 Mich 906 (2010). In regard to defendants' motion for summary disposition, we affirmed only the result of the Court of Appeals majority for different reasons based on the rationale that it was premature to make a decision on the substantive issues based solely on plaintiffs' pleadings. *Id.*

---

[3] *Post* at ___.

[4] See, e.g., *People v Limmer*, 461 Mich 974 (2000). In *Limmer*, we issued an order on March 8, 2000 denying leave to appeal but stating that then-Chief Justice WEAVER and Justices CORRIGAN and MARKMAN would grant leave to appeal and dissenting statements would follow. The order was amended April 18, 2000 to add a dissenting statement by Justice CORRIGAN, joined by then-Chief Justice WEAVER and Justice MARKMAN.

Defendants then filed a motion for reconsideration, which we granted by a vote of 4-3 on July 16, 2010. *Duncan v State of Michigan*, 486 Mich 1071 (2010). On August 6, 2010, plaintiffs filed a motion for reconsideration of the July 16, 2010 order, which the majority now grants.[5] Despite my objection,[6] the majority issued the order granting plaintiffs' motion for reconsideration on November 30, 2010, without my dissent in an act virtually unprecedented in the 11 years I have served on this Court.[7] [8]

---

[5] In the interim between plaintiffs' motion and the order issued here, Justice WEAVER, who voted in favor of defendants' prior motion for reconsideration, resigned, and Justice DAVIS, who now votes in favor of plaintiffs' motion for reconsideration, was appointed to take her seat on the Court.

[6] My objection included with the November 30, 2010 order stated:

> I object to the release of the Court's order without my dissenting statement and I reserve the right to file one as soon as I can. The majority has decided to grant the motion for reconsideration, and to reverse our previous order, without affording disagreeing Justices sufficient time to adequately respond to this decision. Instead, the majority has now decided to expedite the release of its order regardless of the fact that I have worked in a timely fashion to prepare a dissenting statement, but have not yet completed such a statement. This is contrary to our practice during the 11 years I have served on this Court. The Court's decision to suddenly expedite this case seems designed to prevent the new Court after January 1, 2011 from considering a motion for reconsideration.

[7] I am aware of only one other instance in which this course of action was taken in regard to dissenting statements during my time on this Court. See *People v Limmer*, 461 Mich 974 (2000). The circumstances of *Limmer*, however, are far different from the circumstances here. In that case, the dissenting Justices did not object but concurred in the delayed release due to the evident emergency based on the application for leave to appeal occurring in the midst of trial. Further, the order denying leave with dissenting statements to follow was issued within three days of the prosecution filing its emergency application. Similar circumstances are clearly not present here. The initial order denying leave in *Limmer* stated:

> On order of the Court, the application for leave to appeal from the March 6, 2000 decision of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court. The motion to waive production of transcript is thereby moot and is DENIED. The stay order entered March 7, 2000 is VACATED.
>
> WEAVER, C.J., and CORRIGAN and MARKMAN, JJ., would grant leave to appeal and dissenting statements will follow. [*Id.*]

The subsequent amended order in *Limmer* stated:

> In an order dated March 8, 2000, this Court denied leave to appeal. Several members of the Court indicated that they would grant leave to appeal and that dissenting statements would follow. The dissenting statement, as joined in by two members of the Court, reads as follows:

> CORRIGAN, J. Under the current governing standards in Michigan, the prosecution's application cannot succeed. Nonetheless, I would grant leave to appeal to revisit this Court's conclusion in *People v Nix*, 453 Mich 619 (1996), that a directed verdict granted on the basis of an error of law is nevertheless an acquittal for purposes of double jeopardy.

> The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution bars further prosecution after a judgment of acquittal, whether based on a jury verdict of not guilty or a ruling by the court that insufficient evidence existed to convict. *United States v Scott*, 437 US 82, 91, (1978); *Sanabria v United States*, 437 US 54, 68-69, 98 (1978); *United States v Martin Linen Supply Co*, 430 US 564, 570 (1977); *Fong Foo v United States*, 369 US 141, 143 (1962). That the trial court characterized its ruling as a directed verdict does not control its classification. *Scott*, *supra* at 96. "Rather, a defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged . . . .'" *Id*. at 97, quoting *Martin Linen*, *supra* at 571.

> In this case, as in *Nix*, *supra*, the trial court apparently granted a directed verdict on the basis of an erroneous legal ruling that defendant could not be convicted because he owed no legal duty to the victim. *Nix* improperly characterized such a ruling as a determination that insufficient evidence existed to support a conviction. Unlike *Smalis v Pennsylvania*, 476 US 140, 144, n 7 (1986), the trial court's error of law in this case did not involve an actual element of the crime. Rather, the trial court erroneously determined that the offense included an additional element-a duty. Because the trial court's legal determination did not involve an essential element of the offense charged, it did not necessarily constitute an acquittal for double jeopardy purposes. *United States v Maker*, 751 F2d 614, 622 (CA3, 1984). For these reasons, I would grant the prosecution's application for leave to appeal.

> WEAVER, C.J., and MARKMAN, J., concur with the statement of CORRIGAN, J. [*Id*. (Footnote omitted).]

I believe, as Justice MARKMAN sets forth, that we properly granted defendant's motion for reconsideration of the initial order and that defendants are entitled to summary disposition. I write to emphasize that the majority's decision to reinstate the initial order does not rectify our failure to articulate any governing standards in the initial order. Rather, the majority revives this palpable error, placing the trial court in the same quandary of operating without any governing standards in deciding plaintiffs' claims.[9]

The initial order contained an internal inconsistency because it vacated the Court of Appeals opinion without offering any alternative analysis. All future actions in this case depend on an articulation of the standard for pre-conviction Sixth Amendment claims, which the initial order did not provide. Specifically, the governing standard for what constitutes effective assistance of counsel in this context is necessary for this case to properly proceed. In fact, the trial court conceded the lack of clarity in regard to whether the *Strickland v Washington*, 466 US 668 (1984), standard applies to plaintiffs' pre-conviction claims of inadequate representation. Transcript of Motions for Summary Disposition and Class Certification, May 15, 2007, p 34. Further, the order the majority now reinstates has recently been cited as illustrating the "state of confusion created by the lack of a clear standard to which courts can look when adjudicating these types of systemic reform cases." Chiang, *Indigent Defense Invigorated: A Uniform Standard for Adjudicating Pre-conviction Sixth Amendment Claims*, 19 Temp Pol & Civ Rts L R 443, 461 (2010).[10] Additionally, similar class action cases have generated conflicting opinions

---

[8] Chief Justice KELLY'S rationalizations for expediting the release of this order without my dissent are unpersuasive. The existence of jurisprudentially significant issues in this case does not distinguish it from the bulk of cases we decide to hear. Further, the age of this case and the time this case has been before this Court are not adequate reasons for treating this case differently when these characteristics are present in many of the cases we consider. In addition, these reasons simply do not explain why the majority felt compelled to suddenly expedite the release of the order when I acted in a timely fashion to prepare a dissenting statement.

[9] The cases cited by Chief Justice KELLY as instances where we affirmed only the result of the Court of Appeals do not justify the failure to articulate a governing standard here. Contrary to the order here, the orders in *Andres v Brown*, 482 Mich 985 (2008) and *Citizens Protecting Michigan's Constitution v Secretary of State*, 482 Mich 960 (2008), did not result in the continuation of those cases. Rather, in *Andres*, we affirmed the grant of summary disposition, while in *Citizens Protecting Michigan's Constitution*, we affirmed the rejection of an initiative petition.

[10] The article discusses the order the majority now reinstates as follows:

> Meanwhile, the Michigan Supreme Court similarly permitted plaintiffs' suit to proceed but issued only a two paragraph order noting that it was affirming "the result only of the Court of Appeals majority for

on the appropriate constitutional standards.  See *Hurrell-Harring v State of New York*, 15 NY3d 8 (2010) (reversing the holding of the Appellate Division that the claims of a class of indigent defendants were not justiciable and reinstating the plaintiffs' complaint because it "contained[ed] numerous plain allegations that in specific cases counsel simply was not provided at critical stages of the proceedings."); *Platt v Indiana*, 664 NE2d 357, 363 (Ind App, 1996) (affirming the dismissal of the claims of a class of indigent defendants challenging a county indigent defense system, concluding that the claims were not reviewable because "a violation of a Sixth Amendment right will arise only after a defendant has shown he was prejudiced by an unfair trial."); *Kennedy v Carlson*, 544 NW2d 1, 8 (Minn, 1996) (reversing the decision of the district court granting the plaintiff public defender summary disposition, concluding that the plaintiff had failed to show an injury-in-fact because his claims of constitutional violations were "too speculative and hypothetical" where there was no evidence of inadequate assistance in any particular case or that the plaintiff "faced professional liability as a result of his office's substandard services."); *Luckey v Harris*, 896 F2d 479, 480 (CA 11, 1989) (Edmonson, J., dissenting) (criticizing the panel's holding that "deficiencies that do not meet the 'ineffectiveness' standard may nonetheless violate a defendant's rights under the sixth amendment" as "inconsistent with the language and rationale of both *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052, 2064; 80 L Ed 2d 674 (1984), and *United States v Cronic*, 466 US 648, 659; 104 S Ct 2039, 2047; 80 L Ed 2d 657 (1984).").

Yet the majority permits this case to continue without providing any guidance to the trial court and the litigants concerning the legal standards that will govern discovery or subsequent motions.  In particular, the class certification question is inextricably intertwined with the issue of what is the proper standard for evaluating systemic pre-conviction claims of ineffective assistance of counsel.  Determining how many have or will suffer actual injury hinges entirely on what constitutes this type of injury; what type of proofs are necessary to show harm; and whether the putative plaintiffs are adequate class representatives.  Thus, without a standard to form the basis for the class action analysis under *Henry*, it appears the trial court cannot properly make any determination under *Henry*.  Moreover, plaintiffs' motion for reconsideration has not presented

different reasons.  This case is at its earliest stages and, based solely on the plaintiffs' pleadings in this case, it is premature to make a decision on the substantive issues."  Many of the remaining cases filed since *Platt* and prior to *Hurrell-Harring* and *Duncan* have proven at least partially successful, resulting either in judicially mandated reform or in settlement agreements designed to reform the public defense system in question.  Unfortunately, as evidenced by the murky opinions issued in *Hurrell-Harring* and *Duncan* many of the positive decisions lack clarity as to the standard to which plaintiffs are held, decreasing their precedential value for successive litigants and courts.  [Chiang, *supra*, 19 Temp Pol & Civ Rts L R at 462 (Internal footnote omitted).]

anything that changes my view of these problems with the initial order. The majority simply brushes these problems aside by reinstating the initial order. I would deny plaintiffs' motion for reconsideration.

YOUNG and MARKMAN, JJ., join the statement of CORRIGAN, J.

MARKMAN, J. (*dissenting*).

I dissent from the order granting plaintiffs' motion for reconsideration, vacating this Court's July 16, 2010 order, and reinstating this Court's April 30, 2010 order. The July 16 order vacated the April 30 order and held that "[t]he defendants are entitled to summary disposition because, as the Court of Appeals dissenting opinion recognized, the plaintiffs' claims are not justiciable." In a concurring statement, I explained that our April 30 order was erroneous for two reasons:

> First, as defendants observe, this order vacated the Court of Appeals opinion without articulating any governing standards. Second, it is not premature to decide this case because the precise issue presented is whether plaintiffs have stated a claim on which relief can be granted, and this, as well as the threshold justiciability issues, can be determined on the face of the complaint. [*Duncan v State of Michigan,* 486 Mich 1071 (2010) (MARKMAN, J., concurring).]

In addition, I concluded that defendants are entitled to summary disposition for the following reasons set forth in the Court of Appeals' dissent:

> (1) The U.S. Supreme Court in *Gideon v Wainwright*, 372 US 335 (1963), and *Strickland v Washington*, 466 US 668 (1984), "was concerned with results, not process. It did not presume to tell the states *how* to assure that indigent criminal defendants receive effective assistance of counsel." 284 Mich App 246, 357 (2009).

> (2) Plaintiffs' claims would have "the judiciary override the Michigan system of local control and funding of legal services for indigent criminal defendants," despite the absence here of any constitutional violation. *Id*. at 358.

> (3) Plaintiffs' claims are not sufficient to create a presumption of either prejudice, or prejudice per se, that would warrant either declaratory or injunctive relief. *Id*. at 361.

> (4) Plaintiffs lack standing, and, therefore, their claims are not justiciable. *Id*. at 371.

(5) Plaintiffs' claims are not ripe for adjudication, and, therefore, their claims are not justiciable. *Id*. at 371, 376.

(6) Plaintiffs' claims are not justiciable and, therefore, the relief they seek should not be granted. *Id*. at 385.

(7) In finding a justiciable controversy, the Court of Appeals erred in adopting a number of assumptions that are conjectural and hypothetical, including assumptions that plaintiffs and the class they purport to represent will be convicted of the crimes with which they are charged, that such convictions will result from prejudice stemming from ineffective assistance of counsel, that such ineffective assistance will be attributable to the inaction of defendants, and that trial and appellate judges will be unable or unwilling to afford relief for such violations of the Sixth Amendment. *Id*. at 368-370.

(8) There is no constitutional precedent that "guarantees an indigent defendant a particular attorney" or an "attorney of a particular level of skill" [as long as the attorney is not "so deficient as to cause prejudice"]; that requires a "predetermined amount of outside resources be available to an attorney"; or that requires that there be a "meaningful relationship with counsel." *Id*. at 370[, 384].

(9) The Court of Appeals assertions that affording plaintiffs injunctive relief "could potentially entail a cessation of criminal prosecutions against indigent defendants," *id*. at 273, and "that nothing in this opinion should be read as foreclosing entry of an order granting the type of relief so vigorously challenged by defendants," *id*. at 281, accurately describe the potential consequences of its opinion, which consequences would constitute an altogether unwarranted, improper, and excessive response to plaintiffs' claims. *Id*. at 380-385.

(10) The Court of Appeals has "issued an open invitation to the trial court to assume ongoing operational control over the systems for providing defense counsel to indigent criminal defendants in Berrien, Genesee and Muskegon counties." And with that invitation comes a "blank check" on the part of the judiciary to "force sufficient state level legislative appropriations and executive branch acquiescence" in assuming similar control over the systems in every county in this state, while "nullifying the provisions" of the criminal defense act and "superseding the authority of the Supreme Court and the State Court Administrator." *Id*. at 383-384. [*Duncan,* 486 Mich at 1072 (MARKMAN, J., concurring).]

Because plaintiffs have not presented anything in the present motion for reconsideration that causes me to believe that the above reasons do not continue to justify our decision to reverse the Court of Appeals, I would deny plaintiffs' motion for reconsideration. I also join Justice CORRIGAN's dissenting statement in full, and resubmit the remainder of this statement in order that it may be read alongside the CHIEF JUSTICE's response to this statement.

CORRIGAN and YOUNG, JJ., join the statement of MARKMAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 22, 2010

_Corbin R. Davis_
Clerk